IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

|  |  |
|---|---|
| BRIAN D. SANDERS, MARILYN S. ROGERS, and JOAN RAY, on their behalf and on behalf, as representatives, of a class of similarly situated Comcast subscribers,<br><br>Plaintiffs,<br><br>v.<br><br>COMCAST CABLE HOLDINGS, LLC, COMCAST CABLE COMMUNICATIONS HOLDINGS, INC., COMCAST OF ARKANSAS/FLORIDA/LOUISIANA/ MINNESOTA/MISSISSIPPI/TENNESSEE, INC., COMCAST OF GREATER FLORIDA/GEORGIA, INC., COMCAST OF FLORIDA/GEORGIA, LLC; and COMCAST CORPORATION,<br><br>Defendants. | Case No.: 3:07-cv-918-J-33HTS |

## DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION AND INCORPORATED MEMORANDUM OF LAW

Defendants, Comcast Cable Holdings, LLC, Comcast Cable Communications Holdings, Inc., Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, Inc., Comcast of Greater Florida/Georgia, Inc., Comcast of Florida/Georgia, LLC, and Comcast Corporation (collectively, "Defendants" or "Comcast") file this Motion to Compel Arbitration and Stay Action, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, because the subscriber agreement between Plaintiffs and Comcast requires Plaintiffs to arbitrate the claims alleged in the Amended Complaint.[1]

---

[1] Pursuant to Local Rule 3.01(g), Comcast's counsel certifies that he conferred with opposing counsel in a good-faith effort to resolve the issues raised in this motion but was not able to resolve those issues.

## CONCISE STATEMENT OF THE RELIEF REQUESTED

Comcast provides cable television services to subscribers in Florida, including Plaintiffs, who allege that Comcast failed to provide certain digital cable services as represented, an allegation that is the basis of both counts in their Amended Class Representation Complaint (the "Amended Complaint").[2]

Plaintiffs, however, pursuant to their subscriber agreements with Comcast – and pursuant to notice provisions set forth in Federal law governing cable communications – entered into an arbitration agreement with Comcast no later than July 31, 2007. The arbitration agreement requires that Plaintiffs arbitrate <u>all</u> disputes related to their relationship with Comcast, and also gave Plaintiffs the right to opt out of arbitration entirely within 30 days, without any adverse effect on their cable service. Plaintiffs did not, however, exercise their right to opt out, and the courts routinely enforce such arbitration agreements under those circumstances.

The Federal Arbitration Act, which applies to this case, creates a strong presumption in favor of arbitration, and arbitration agreements are to be liberally construed in favor of arbitration. Here, Plaintiffs agreed to arbitration and there is no question that Plaintiffs' claims that Comcast did not provide certain digital cable services as represented is a matter required to be arbitrated under the broad terms of the arbitration agreement.

Comcast, therefore, respectfully submits that this Court should compel the individual arbitration of Plaintiffs' claims and stay this action pending that arbitration.

## STATEMENT OF BASIS FOR THE RELIEF REQUESTED

The basis for the relief requested in this motion is the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, as well as the authority set forth below.

---

[2] This motion is solely directed to the issue of arbitration. Plaintiffs' claims are meritless, and Comcast denies them.

# MEMORANDUM OF LAW

# FACTUAL BACKGROUND

## Plaintiffs Receive Cable Service Under the Subscriber Agreement

Plaintiff Brian Sanders became a cable television subscriber of Comcast on August 27, 2004. Declaration of Bill Ferry ("Ferry Decl.")[3] ¶ 5; see also Am. Compl. ¶ 14. Plaintiff Marilyn Rogers became a cable television subscriber of Comcast on May 11, 2003. Ferry Decl. ¶ 6; see also Am. Compl. ¶ 14. Comcast cannot determine with certainty the identity of Plaintiff Joan Ray, who, from the best of Comcast's knowledge, could be one of two individuals, either Joan B. Ray ("Joan B. Ray"), who became a subscriber of Comcast on February 3, 2005, or Joan Ray ("Joan Ray"), who became a subscriber of Comcast on December 18, 2006. Ferry Decl. ¶¶ 7-9; see also Am. Compl. ¶ 15.

In November 2006, pursuant to Comcast's usual practice for disseminating annual notices to subscribers, Sanders, Rogers and Joan B. Ray were provided with Comcast's Policies and Procedures (the "Subscriber Agreement"), which provides that Comcast may change the terms of service at any time by notice in accordance with applicable law. Ferry Decl. ¶¶ 10-11 & Ex. A. Pursuant to Comcast's usual practice to provide new subscribers with a Welcome Kit (the "Welcome Kit"), including the Subscriber Agreement, at the time of installation, Comcast provided Joan Ray with the Subscriber Agreement when her service was installed. Ferry Decl. ¶¶ 10, 12.

In July 2007, in accordance with the Subscriber Agreement and applicable federal law, all three Plaintiffs were mailed a two-page notice titled "Notice From Comcast Regarding Arbitration" (the "Arbitration Agreement"). Ferry Decl. ¶ 13 & Ex. B. The Arbitration Agreement was mailed to Sanders as an insert to his monthly bill for the service period July 13,

---

[3] The Ferry Declaration is attached hereto as Exhibit 1.

2007 through August 12, 2007, for which he was billed $152.68 with a payment deadline of July 24, 2007, and he paid the amount due on July 24, 2007. Ferry Decl. ¶ 14. The Arbitration Agreement was mailed to Rogers as an insert to her monthly bill for the service period July 11, 2007 through August 10, 2007, for which she was billed $116.28 with a payment deadline of July 22, 2007, and she paid the amount due on July 21, 2007. Id. ¶ 15. The Arbitration Agreement was mailed to Joan B. Ray as an insert to her monthly bill for the service period July 14, 2007 through August 13, 2007, for which she was billed $51.08 with a payment deadline of July 24, 2007, and she paid the amount due on July 31, 2007. Id. ¶ 16. The Arbitration Agreement was mailed to Joan Ray as an insert to her monthly bill for the service period July 18, 2007 through August 17, 2007, for which she was billed $119.83 with a payment deadline of July 30, 2007, and she paid the amount due on July 28, 2007. Id. ¶ 17.

**Plaintiffs Also Receive Cable Services Pursuant to the Arbitration Agreement**

In large type at the very beginning of the Arbitration Agreement are the words "THIS NOTICE CONTAINS AN IMPORTANT CHANGE TO YOUR CUSTOMER OR SUBSCRIBER AGREEMENT WITH COMCAST," and the first paragraph of the Arbitration Agreement – headlined "NOTICE FROM COMCAST REGARDING ARBITRATION" – continues that:

> PLEASE NOTE THAT THIS CHANGE TO THE AGREEMENT AS SET FORTH BELOW RESTATES AND SUPERSEDES ANY PREEXISTING PROVISION IN THE AGREEMENT CONCERNING ARBITRATION AND TAKES EFFECT THIRTY (30) DAYS AFTER THIS NOTICE WAS MAILED TO YOU (THE "EFFECTIVE DATE").
>
> IF YOU DO NOT WISH TO BE BOUND BY THIS ARBITRATION PROVISION, YOU MUST NOTIFY COMCAST IN WRITING WITHIN THIRTY (30) DAYS ....
>
> IF YOU DO NOT OPT OUT OF ARBITRATION IN THE MANNER INDICATED ABOVE YOUR CONTINUED USE OF THE SERVICE AFTER THE EFFECTIVE DATE SHALL BE DEEMED TO BE YOUR ACCEPTANCE

OF THIS CHANGE. THIS CHANGE MAY HAVE A SUBSTANTIAL
IMPACT ON THE WAY IN WHICH YOU OR COMCAST WILL RESOLVE
ANY DISPUTE WITH ONE ANOTHER.

Id. Ex. B.

The Arbitration Agreement applies to any "Dispute," which is defined as "any dispute, claim or controversy between you and Comcast regarding any aspect of your relationship with Comcast that has accrued or may hereafter accrue, whether based in contract, statute, regulation, ordinance, tort …, or any other legal or equitable theory." Id. Ex. B §§ a, b. "'Dispute' is to be given the broadest possible meaning that will be enforced." Id. Ex. B § b.

As noted above, the Arbitration Agreement provided Plaintiffs – and all other subscribers – the opportunity to opt out of the Arbitration Agreement by notifying Comcast in writing within 30 days of receipt of the Arbitration Agreement. Id. Ex. B § c. Opting out of the Arbitration Agreement would have no adverse affect on subscribers' cable service:

> YOUR DECISION TO OPT OUT OF THIS ARBITRATION PROVISION WILL HAVE NO ADVERSE EFFECT ON YOUR RELATIONSHIP WITH COMCAST OR THE DELIVERY OF SERVICES TO YOU BY COMCAST.

Id.

**Plaintiffs Did Not Exercise Their Rights to Opt Out of the Arbitration Agreement**

Despite having the opportunity to opt out, none of the Plaintiffs notified Comcast that they wished to opt out of the Arbitration Agreement within 30 days of receiving the Arbitration Agreement, or at any time thereafter. Id. ¶¶ 19-22.

**The Arbitration Agreement Prohibits Class Arbitration**

The Arbitration Agreement prohibits claims from being arbitrated on a class-wide basis:

> ALL PARTIES TO THE ARBITRATION MUST BE INDIVIDUALLY NAMED. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT

IN A PURPORTED REPRESENTATIVE CAPACITY ... UNLESS THE
STATUTE UNDER WHICH YOU ARE SUING PROVIDES OTHERWISE.

Id. Ex. B § f.2.

The Arbitration Agreement, however, gives the subscriber several rights that make the individual arbitration process more flexible and less costly for subscribers. For example, a subscriber may choose between two different arbitration services: the American Arbitration Association or the National Arbitration Forum. Id. Ex. B § d. Upon written request, the subscriber also may require Comcast to advance the filing fees and costs of the arbitration (other than the subscriber's own attorney and expert witness fees). Id. Ex. B § h. A subscriber who prevails at arbitration has no obligation to reimburse Comcast for these advanced fees and costs. Id. Even if the subscriber does not prevail, he or she is obligated to reimburse Comcast for the advanced fees and costs only to the extent awardable in a judicial proceeding. Id.

Despite the clear terms of the Arbitration Agreement and their failure to opt out of the Agreement, Plaintiffs filed this class-action lawsuit on August 22, 2007 and filed their Amended Complaint on August 24, 2007. Plaintiffs' claims are central to their cable service from Comcast, namely that Comcast failed to provide ON DEMAND services to digital subscribers as represented. Am. Compl. ¶¶ 23-42.

## ARGUMENT

I. **PLAINTIFFS AGREED TO BE BOUND BY THE ARBITRATION AGREEMENT, AND, THUS, FEDERAL LAW MANDATES THAT ALL OF PLAINTIFFS' CLAIMS ARE SUBJECT TO ARBITRATION.**

A. **The Federal Arbitration Act Creates a Strong Federal Presumption in Favor of Arbitration.**

The Federal Arbitration Act ("FAA") applies to any "written provision in any ... contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The written Arbitration Agreement is clearly a contract "evidencing a transaction involving commerce," and, therefore,

is governed by the FAA. See 9 U.S.C. § 2; 47 U.S.C. § 151 (Communications Act of 1934 was enacted for the purpose of "regulating interstate and foreign commerce in communication by wire and radio"); Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 273-81 (1995) (homeowner's contract for termite extermination services from franchise of a national extermination company was a transaction involving "commerce" under the FAA).

The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. And it is well-established that the FAA's Section 2 creates a strong presumption in favor of arbitration and creates "a body of federal substantive law of arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). See also, e.g., Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (enforcing arbitration clause in employment contract pursuant to FAA and Georgia law); Blinco v. Green Tree Servicing LLC, 400 F.3d 1308, 1311 (11th Cir. 2005) (noting "unquestionably strong federal policy favoring arbitration"); Coastal Health Care Group, Inc. v. Schlosser, 673 So. 2d 62, 65-66 (Fla. 4th DCA 1996) (holding that, since an arbitration clause was contained in a contract of sale involving a transaction in interstate commerce, the FAA applied so as to compel arbitration).[4]

As shown below, there is no question that the Arbitration Agreement, which is in writing and expressly modifies the terms of Plaintiffs' Subscriber Agreement, see Ferry Decl. Ex. B, is (1) valid and binding against the Plaintiffs and (2) applies to the dispute alleged in Plaintiffs' Amended Complaint. Accordingly, Plaintiffs cannot litigate their claims against Comcast, and

---

[4] The presumption is so strong that the FAA "requires district courts to compel arbitration of ... arbitrable claims ... even when the result would be the possibly inefficient maintenance of separate proceedings in different forums." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985); see also Moses H. Cone, 460 U.S. at 20 ("federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement").

this Court should compel arbitration. See Dean Witter, 470 U.S. at 218 ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (citing 9 U.S.C. §§ 3, 4).

**B.     The Arbitration Agreement Is a Valid Agreement to Arbitrate.**

**1.     The Arbitration Provision Is Binding Under Federal Law.**

Under the 1996 amendments to the Cable Act, "[a] cable operator may provide notice of service and rate changes to subscribers using any reasonable written means at its sole discretion." 47 U.S.C. § 552(c). The Federal Communications Commission ("FCC") "[a]ccordingly ... modif[ied its] rules ... to provide that a cable operator may provide notice of service and rate changes to subscribers using any reasonable written means at its sole discretion.... [N]otice provided through written announcements on the cable system or in the newspaper will be presumed sufficient." Telecommunications Act of 1996, 61 Fed. Reg. 18968, 18973 (April 30, 1996). See also 47 C.F.R. §§ 76.1602, 76.1603 (2005) (requiring 30-day advance notice of any "significant" changes to, e.g., the conditions of subscription to programming and other services and billing and complaint procedures).

In accordance with these provisions and rules, the Subscriber Agreement in effect at the time Plaintiffs received the Arbitration Agreement provided that Comcast may notify subscribers of changes in the terms of service at any time, and that a subscriber accepts any such changes by continuing to receive and pay for cable service. Ferry Decl. Ex. A. Assuming, without conceding, that the Arbitration Agreement is a "significant" change to the Subscriber Agreement, the Arbitration Agreement – which was mailed in July 2007 and after which Plaintiffs continued to receive and pay for cable service from Comcast, id. ¶¶ 13-17 – would have taken effect no later than July 31, 2007. See 47 U.S.C. § 552(c); 47 C.F.R. §§ 76.1602, 76.1603 (2005); H.R.

Rep. No. 104-204, at 111 (1996), reprinted in 1996 U.S.C.C.A.N. 10, 79 (the Cable Act's legislative history makes it clear that the "purpose of a notice requirement is to ensure that consumers have sufficient warning about rate and service changes so they can choose to disconnect their service prior to the implementation of the change"). In addition to the notice requirements of the Cable Act and the FCC rules promulgated thereunder, the Arbitration Agreement gave Plaintiffs the additional right to opt out of that Agreement completely – without any adverse effect on their relationship with Comcast whatsoever – by written notice within 30 days. Ferry Decl. Ex. B § c. But Plaintiffs did not opt out of the Arbitration Agreement, id. ¶¶ 19-22, making it even clearer that they are bound to its terms by operation of the express provisions of the Cable Act.

Numerous courts have held that mailed notice of arbitration provisions amending consumer agreements are binding on the consumer, particularly where, as here, consumers were given a reasonable time in which to cancel service, and the additional opportunity to opt out of the Arbitration Agreement in its entirety, with no adverse effect on their cable service. See, e.g., Boomer v. AT&T Corp., 309 F.3d 404, 415-17 (7th Cir. 2002) (in consumer class action under the Communications Act, enforcing an arbitration provision in a mailed notice, where subscribers were afforded a "reasonable opportunity to reject the [carrier's terms, including an arbitration provision], but nonetheless continued to use" the carrier's services); Cunningham v. Van Ru Credit Corp., No. 06-10452, 2006 WL 3289775, at *2 (E.D. Mich. Nov. 12, 2006) (compelling arbitration where Plaintiff received notice of an arbitration provision and failed to opt out); Venezie v. MBNA Am. Bank, No. 2:05CV1458, 2006 WL 2092567, at *6 (W.D. Pa. Jul. 26, 2006) (granting motion to compel arbitration, and holding that arbitration clause was valid and enforceable, where plaintiff was sent notice of the arbitration provision but failed to opt

out); Mackey v. MBNA Am. Bank, N.A., 343 F. Supp. 2d 966, 970 (W.D. Wash. 2004) (same); Pay Phone Concepts, Inc. v. MCI Telecomms. Corp., 904 F. Supp. 1202, 1207 (D. Kan. 1995) (compelling arbitration where the Communications Act provided for the means by which a service provider amended its agreements and state law contract principles did not apply); Stiles v. Home Cable Concepts, Inc., 994 F. Supp. 1410, 1416 (M.D. Ala. 1998) (under Utah statute similar to the Cable Act's notice provision, holding that purchaser of satellite television system was bound by arbitration clause added to his purchase agreement by a mailed notice).[5]

Indeed, in similar circumstances, the Southern District of Florida recently held that the plaintiffs, telephone customers, were bound by a mailed arbitration agreement that they did not reject and claimed not to have received, where "Plaintiff Rivera admits that she continued AT&T service for more than a year and half after AT&T mailed her a [customer service agreement], and Plaintiff Daniel offers no evidence as to when or if she discontinued service." Rivera v. AT&T Corp., 420 F. Supp. 2d 1312, 1315, 1320 (S.D. Fla. 2006).

Accordingly, the Arbitration Agreement is valid and enforceable under the Cable Act and the rules of the FCC promulgated thereunder.

### 2. The Arbitration Agreement Is Binding Under Florida Law.

Although the formation of a contract to arbitrate is governed by federal law, see 47 U.S.C. § 552, the Arbitration Agreement would also be valid under Florida law. As a threshold matter, written arbitration clauses need not be signed by both parties. H.W. Gay Enters., Inc. v. John Hall Elec. Contracting, 792 So. 2d 580, 581 (Fla. 4th DCA 2001); see also Interpool Ltd. v. Through Transp. Mut. Ins. Ass'n Ltd., 635 F. Supp. 1503, 1505 (S.D. Fla. 1985) (citation

---

[5] See also, e.g., Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1150 (7th Cir. 1997) (where shipment of a computer was accompanied by contract including arbitration clause, providing that it would be enforceable unless the computer was returned within 30 days, purchaser who did not return the computer was bound by the arbitration provision); Vigil v. Sears Nat'l Bank, 205 F. Supp. 2d 566, 568 (E.D. La. 2002) (holding mailed notice of arbitration clause enforceable); Beneficial Nat'l Bank, USA v. Payton, 214 F. Supp. 2d 679, 687 (S.D. Miss. 2001) (consumer bound by arbitration provision in mailed notice where consumer did not exercise "right to reject the arbitration provision").

MIAMI 745125 (2K)
WHITE & CASE LLP   Wachovia Financial Center, Miami, Florida 33131-2352   Tel+ 1 305 371 2700
10

omitted) ("party may be bound by an agreement to arbitration even in the absence of a signature").

Moreover, because Plaintiffs accepted Comcast's cable service by payment without objection after receiving the Arbitration Agreement, see pp. 3-4 supra, the Arbitration Agreement is binding under well-established Florida law that valid contracts, including contracts containing arbitration clauses, are formed by a party's continued use or acceptance or services without objection. See, e.g., Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero, 827 So. 2d 338, 339 (Fla. 3d DCA 2002) (remanding with instructions to grant motion to compel arbitration; nursing home admission contract with arbitration clause was valid even though unsigned, where parties assented to terms by mutual performance, namely treating patient, and accepting treatment, for two months); Rivera, 420 F. Supp. 2d at 1320-21 (enforcing arbitration provision against telephone consumers who were sent the agreement by mail and continued their telephone service after mailing); Consol. Res. Healthcare Fund I, Ltd. v. Fenelus, 853 So. 2d 500, 503 (Fla. 4th DCA 2003) (citation omitted) ("assent ... may be shown ... by the acts or conduct of the parties"); Sosa v. Shearform Mfg., 784 So. 2d 609, 610 (Fla. 5th DCA 2001) ("Even if parties do not sign a contract, they may be bound by the provisions of the contract, if the evidence supports that they acted as if the provisions of the contract were in force.").

### C. All of Plaintiffs' Claims Are Subject to Arbitration Under the Broad Scope of the Arbitration Agreement.

Given the presumption in favor of arbitration, it is well-established that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone, 460 U.S. at 24-25; see also Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1323-24 (11th Cir. 2002) (reversing district court's denial of defendant's motion to compel arbitration). Here, there is no doubt that the Arbitration Agreement covers the dispute alleged by Plaintiffs.

The Arbitration Agreement applies to any "dispute, claim or controversy between you and Comcast regarding any aspect of your relationship with Comcast." See p. 5 supra. Plaintiffs' allegations – that Comcast failed to provide ON DEMAND services as represented as part of its Digital Cable package, Am. Compl. ¶¶ 23-42 – is central to that relationship. The present dispute, therefore, is subject to arbitration under the broad terms of the Arbitration Agreement. See, e.g., Blinco, 400 F.3d at 1311 (plaintiffs' claim that defendant failed to provide the required notice that real estate loan had been transferred to another lender for servicing was within the scope of arbitration clause in loan agreement that applied to "all disputes, claims or controversies arising from or relating to the contract or the relationships which result from the contract").

### D. The Arbitration Provision's Ban on Class-Action Arbitration Also Is Valid and Enforceable.

#### 1. The Courts Routinely Enforce Arbitration Agreements That Bar Class Arbitration.

The Supreme Court has held that, "by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991) (citation and internal quotation marks omitted). One such procedure that may be unavailable is the class action. Numerous courts have held that a class action bar is both enforceable and consistent with arbitration and other statutory principles. In Gilmer, the Supreme Court held that an arbitration agreement barring class actions was enforceable even though the claims were brought under the federal Age Discrimination in Employment Act, which permits collective actions. Id. at 32 (citation omitted).

The Eleventh Circuit, enforcing such a bar, also has acknowledged that, "[a]s the Supreme Court has explained, the fact that certain litigation devices may not be available in an

arbitration is part and parcel of arbitration's ability to offer 'simplicity, informality, and expedition.'" Caley, 428 F.3d at 1378 (quoting Gilmer, 500 U.S. at 31). Indeed, class action waiver "provisions are a common feature of consumer arbitration agreements, and numerous courts have recognized that they are valid and fully enforceable." Edwards v. Blockbuster Inc., 400 F. Supp. 2d 1305, 1309 (E.D. Okla. 2005). See also, e.g., Jenkins v. First Am. Cash Advance of Georgia, LLC, 400 F.3d 868, 877-78 (11th Cir. 2005) ("arbitration agreements precluding class action relief are valid and enforceable"); Randolph v. Green Tree Fin. Corp.-Ala., 244 F.3d 814, 819 (11th Cir. 2001) (compelling arbitration of claims under Truth in Lending Act ("TILA"), even though TILA provided for class actions); see also Livingston v. Assocs. Fin., Inc., 339 F.3d 553, 559 (7th Cir. 2003) (because the arbitration agreement at issue is enforceable and precludes class arbitration, "we are therefore obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis") (citation and internal quotation marks omitted); Iberia Credit Bureau, Inc. v. Cingular Wireless LLC, 379 F.3d 159, 174-75 (5th Cir. 2004) (enforcing arbitration agreement with class action prohibition where the "arbitration clause does not leave the plaintiffs without remedies"); Johnson v. W. Suburban Bank, 225 F.3d 366, 374, 377 n.4 (3d Cir. 2000) (class arbitration cannot be had "unless the arbitration agreement contemplates such a procedure," and compelling arbitration and enforcing class action ban even though claims were brought under TILA, which permits class actions); Snowden v. Checkpoint Check Cashing, 290 F.3d 631, 638 (4th Cir. 2002) (same); Rivera, 420 F. Supp. 2d at 1322 (compelling arbitration of dispute under agreement precluding class-action relief).

Moreover, it also is well-established that the unavailability of certain procedures in arbitration, such as class procedures, reflects the <u>advantages</u> of arbitration, which "trades the

procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." Gilmer, 500 U.S. at 31; see also, e.g., Johnson, 225 F.3d at 376 (cataloguing the benefits of arbitration's simpler procedures and compelling individual arbitration of TILA claims even though TILA permits class actions). As shown above, the Arbitration Agreement contains several provisions that make arbitration economical for subscribers. A subscriber may require Comcast to advance the filing fees and costs of the arbitration (other than the subscriber's own attorney and expert witness fees), and a subscriber who prevails at arbitration has no obligation to reimburse Comcast for those fees and costs. See p. 6 supra; see also, e.g., Jenkins, 400 F.3d at 878 n.8 (enforcing ban on class arbitration where, "[u]nder the Arbitration Agreements, Defendants have offered to advance [plaintiff's] arbitration expenses ... if she submits a written request").

The Eleventh Circuit's recent decision in Dale v. Comcast Corp., __ F.3d __, 2007 WL 2471222, at *7 (11th Cir. 2007), is not to the contrary. In Dale, the court only invalidated a class-action waiver on the particular facts before it, concluding that "the enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances." Id. at *6. Here, as shown below, the facts and circumstances are very unlike those in Dale, especially because, unlike in Dale, the Plaintiffs had the opportunity to opt out of the arbitration provision entirely with no adverse effect on their service, but did not opt out, see pp. 14-15 infra, and, further unlike in Dale, Plaintiffs are entitled to attorney fees under their primary claim, see pp. 17-18 infra.

### 2. Plaintiffs Could Have Opted Out of the Arbitration Agreement Entirely, Without Affecting Their Cable Service.

Finally, although Plaintiffs had the right to opt out of the Arbitration Agreement entirely – without any adverse effect on their cable service whatsoever – they did not elect to do so. See

p. 5 supra. Where a plaintiff had such a meaningful opportunity to opt out, courts overwhelmingly have enforced arbitration agreements containing class action waivers. See Davidson v. Cingular Wireless LLC, No. 2:06CV00133-WRW, 2007 WL 896349, at *6 (E.D. Ark. Mar. 23, 2007) (enforcing class action waiver in arbitration clause where plaintiff failed to exercise right to opt out of the arbitration provision); Hicks v. Macy's Dep't Stores, Inc., No. C 06-02345 CRB, 2006 WL 2595941, at *4 (N.D. Cal. Sept. 11, 2006) (class action waiver not unconscionable because plaintiff had a meaningful opportunity to opt out); Tsadillas v. Providian Nat'l Bank, 786 N.Y.S.2d 478, 480 (N.Y. App. Div. 2004) (enforcing arbitration provision barring class actions and finding that the "arbitration provision alone is not unconscionable because plaintiff had the opportunity to opt out without any adverse consequences"); see also Legair v. Circuit City Stores, Inc., Nos. 05-4179, 06-3361, 2007 WL 98085, at *2-3 (6th Cir. Jan. 12, 2007) (arbitration agreement not unconscionable or unenforceable where employee was given opportunity to opt out but failed to do so); Circuit City Stores, Inc. v. Ahmed, 283 F.3d 1198, 1199 (9th Cir. 2002) (enforcing arbitration clause where plaintiff "was not presented with a contract of adhesion because he was given an opportunity to opt out of the Circuit City arbitration program by mailing in a simple one-page form"); Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1108 (9th Cir. 2002) (same); Providian Nat'l Bank v. Screws, 894 So. 2d 625, 629 (Ala. 2003) (arbitration agreement not unconscionable where "every cardholder had the right to reject the arbitration provision without affecting the status of [his or her] credit card account").

E.  **The Arbitration Agreement Is Not Unconscionable Under Florida Law.**

Under Florida law, a contract provision is unconscionable only if it is both procedurally and substantively unconscionable. Fonte v. AT&T Wireless Servs., Inc., 903 So. 2d 1019, 1025 (Fla. 4th DCA 2005) ("To decline to enforce a contract as unconscionable, the contract must be both procedurally unconscionable and substantively unconscionable."); see also Rivera, 420 F.

Supp. 2d at 1321 (same); Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 284 (Fla. 1st DCA 2003) (same) (citation omitted). Moreover, Plaintiffs bear the burden of proving procedural and substantive unconscionability. See, e.g., Gainesville Health Care, 857 So. 2d at 288 ("As the party seeking to avoid the arbitration provision on the ground of unconscionability, the burden was on [plaintiff] ... to prove *both* procedural and substantive unconscionability."). Plaintiffs have not met that burden.

### 1. The Arbitration Agreement Is Not Procedurally Unconscionable.

To determine procedural unconscionability, "a court must look to the circumstances surrounding the transaction to determine whether the complaining party had a meaningful choice at the time the contract was entered." Gainesville Health Care, 857 So. 2d at 284 (citation and internal quotation marks omitted). There is no procedural unconscionability, however, where, as here, an arbitration provision is prominently disclosed, and where the complaining party was free to accept or reject it. See, e.g., Fonte, 903 So. 2d at 1025; Gainesville Health Care, 857 So. 2d at 285; Rivera, 420 F. Supp. 2d at 1321-22.

Indeed, in the "NOTICE FROM COMCAST REGARDING ARBITRATION," Comcast prominently disclosed that "THIS NOTICE CONTAINS AN IMPORTANT CHANGE TO YOUR CUSTOMER OR SUBSCRIBER AGREEMENT WITH COMCAST." Ferry Decl. Ex. B. And the Arbitration Agreement – far from being offered on a "take-it-or-leave-it" basis – gave Plaintiffs and all subscribers the right to opt out of the Arbitration Agreement completely, without any adverse affect on their relationship with Comcast or their cable service. Id. Ex. B § c. Under these circumstances, the Arbitration Agreement cannot be procedurally unconscionable. See Fonte, 903 So. 2d at 1026 (arbitration provision in consumer cell-phone contract not procedurally unconscionable where there was "ample notice" of the provision and the customer was free to reject it); Gainesville Health Care, 857 So. 2d at 285 (arbitration

provision in nursing-home contract not procedurally unconscionable where it was not presented on a "take-it-or-leave-it" basis); Rivera, 420 F. Supp. 2d at 1321-22 (no procedural unconscionability where AT&T prominently disclosed the arbitration provision and gave customers the opportunity to reject it).[6] See also, e.g., Davidson, 2007 WL 896349 at *6 (class action waiver in contract for cell-phone service not unconscionable where plaintiff failed to opt out; such form contracts are "an integral part of modern commerce"); Screws, 894 So. 2d at 629 (arbitration agreement not unconscionable where "every cardholder had the right to reject the arbitration provision without affecting" their service).

### 2. The Arbitration Provision Is Not Substantively Unconscionable.

Because the Arbitration Agreement is not procedurally unconscionable, the Court need not reach the issue of substantive unconscionability. See, e.g., Fonte, 903 So. 2d at 1027 ("As we have found a lack of procedural unconscionability, ... we need not address substantive unconscionability."); Gainesville Health Care, 857 So. 2d at 288 (same).

Nevertheless, the Arbitration Agreement also is substantively reasonable. Contractual terms are only substantively unreasonable where, unlike here, "they are so outrageously unfair as to shock the judicial conscience." Rivera, 420 F. Supp. 2d at 1321 (quoting Gainesville Health Care, 857 So. 2d at 284-85). Nothing in the Arbitration Agreement prevents Plaintiffs from vindicating whatever common-law or statutory rights they may have; the Agreement expressly provides that Comcast will advance filing fees and arbitration costs; and Plaintiffs' primary claim is brought under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), which provides for recovery of attorney fees if Plaintiffs prevail. See § 501.2105, Fla. Stat.

---

[6] Powertel, Inc. v. Bexley, 743 So. 2d 570 (Fla. 1st DCA 1999), is not to the contrary. In that case, the court found an arbitration provision procedurally unconscionable only where the provision was not prominently disclosed and was presented on a take-it-or-leave-it basis; Powertel's customers were effectively forced to agree to the provision because rejecting it would have meant losing their entire investment in telephones that only worked with Powertel's equipment. Id. at 574-75.

(2007); Fonte, 903 So. 2d at 1024 (holding that "the arbitration clause's bar on class representation does not defeat any of the remedial purposes of FDUTPA"); Rivera, 420 F. Supp. 2d at 1322 (arbitration provision in consumer telephone customer service agreement barring class-wide relief is not substantively unconscionable where consumers could seek attorney fees if authorized by applicable substantive law).

Moreover, the courts, including the Supreme Court and the Eleventh Circuit, routinely have held that arbitration agreements precluding class-action relief are valid and enforceable, particularly where, as here, all Plaintiffs had the right to opt out of the Arbitration Agreement – with no adverse effect on their cable service – but did not do so. See, e.g., Gilmer, 500 U.S. at 31 (enforcing arbitration agreement barring class actions even though the claims were brought under the federal Age Discrimination in Employment Act, which permits collective actions); Caley, 428 F.3d at 1378 (quoting Gilmer, 500 U.S. at 31) (enforcing arbitration agreement barring class actions, and acknowledging that, "[a]s the Supreme Court has explained, the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer 'simplicity, informality, and expedition'"); Edwards, 400 F. Supp. 2d at 1309 (class action waiver "provisions are a common feature of consumer arbitration agreements, and numerous courts have recognized that they are valid and fully enforceable"). See also pp. 12-14 supra.

## II. THE COURT SHOULD COMPEL ARBITRATION AND STAY THIS ACTION PENDING ARBITRATION.

Under Section 3 of the FAA, in any lawsuit "referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. As demonstrated above, the Arbitration Agreement is a valid agreement to arbitrate with which the Plaintiffs refuse to

comply, and all of Plaintiffs' claims in the Amended Complaint are subject to arbitration under that Agreement. Thus, this Court should compel the parties to binding arbitration and stay this action pending arbitration. See, e.g., Suarez-Valdez v. Shearson Lehman/Am. Express, Inc., 858 F.2d 648, 649 (11th Cir. 1988) (on defendant's motion to stay pending arbitration, district court correctly stayed action subject to valid arbitration agreement, and should have stayed all discovery in that action as well); Rivera, 420 F. Supp. 2d at 1323 (ordering plaintiffs to pursue their claims individually according to the arbitration procedure in the customer service agreement and staying action pending resolution of the arbitration process).

## CONCLUSION

For the foregoing reasons, Comcast respectfully requests that the Court enter an order (1) compelling the Plaintiffs to submit their individual claims to binding arbitration; and (2) staying this action pending arbitration.

Respectfully submitted this 19th day of October, 2007.

               WHITE & CASE LLP

               s/ David P. Draigh
               Jaime A. Bianchi
               Fla. Bar No. 908533
               David P. Draigh
               Fla. Bar No. 624268
               Wachovia Financial Center, Suite 4900
               200 South Biscayne Boulevard
               Miami, Florida 33131-2352
               Telephone: (305) 371-2700
               Facsimile: (305) 358-5744

               Counsel for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of October, 2007, I filed the foregoing using the court's CM-ECF system, which will automatically send a copy to Donald E. Pinaud, Jr., Esq., Attorney for Plaintiffs.

                                                  s/ David P. Draigh
                                                  David P. Draigh

MIAMI 745125 (2K) **WHITE & CASE**LLP  Wachovia Financial Center, Miami, Florida 33131-2352  Tel+ 1 305 371 2700

20