IN THE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**BRIAN D. SANDERS, MARILYN S.
ROGERS** and **JOAN RAY,** on their
behalf and on behalf, as
representatives, of **A CLASS
OF SIMILARLY SITUATED COMCAST
SUBSCRIBERS,**

CASE NO.: 3:07-cv-918-J-33HTS

Plaintiffs,

**CLASS REPRESENTATION**

v.

**COMCAST CABLE HOLDINGS, L.L.C.;
COMCAST CABLE COMMUNICATIONS
HOLDINGS, INC.; COMCAST
OF ARKANSAS/FLORIDA/LOUISIANA/
MINNESOTA/MISSISSIPPI/TENNESSEE,
INC.; COMCAST OF GREATER FLORIDA/
GEORGIA, INC.; COMCAST OF
FLORIDA/GEORGIA, L.L.C.;** and
**COMCAST CORPORATION,**

Defendants.

_____/

### PLAINTIFFS' MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANTS' MOTION
### TO COMPEL ARBITRATION AND STAY ACTION

Plaintiffs, BRIAN D. SANDERS ("Sanders"), MARILYN S. ROGERS
("Rogers") and JOAN RAY ("Ray"), on their behalf and on behalf,
as representatives, of A CLASS OF SIMILARLY SITUATED COMCAST
SUBSCRIBERS, by and through the undersigned attorneys, hereby
file this memorandum of law in opposition to Defendants' motion
to compel arbitration and stay action, and for the good-grounds
set forth herein, say that the motion should be DENIED.

## I. Plaintiffs never received arbitration notices from Comcast advising them of the change in the terms of their service contract with Comcast.

Defendants argue that the facts that support its motion to compel arbitration are that each of the named plaintiffs were mailed notices in July 2007 (just a month before this action was filed) which notices provided, *inter alia*, that all disputes between Defendants and Plaintiffs would be resolved by arbitration. Plaintiffs, however, deny that they ever received these notices, and they contend rather that the envelopes in which their July bills were received did not contain the notices that Defendants alleged were mailed. Plaintiffs each have prepared affidavits to this effect, which are attached hereto as Exhibits A, B and C and are incorporated herein by reference.

Defendants will no doubt argue that Comcast mailed the notices and that Plaintiffs denial of receiving them should be summarily disregarded by the Court as not reasonably believable. However, under the facts of this case, the Court should conclude that Plaintiffs' denial is reasonable and believable under the circumstances because Defendants had a special opportunity to make absolutely certain that it could show that it mailed the notices, but rather, Defendants intentionally passed on the opportunity leaving room for doubt of the mailing "wide-open."

Exhibit A hereto is the Affidavit of Plaintiff Marilyn S. Rogers. In that affidavit, Ms. Rogers states that she never received the notice at issue with her July 2007 bill (or any

other). She further attaches a copy of the July 2007 bill.

As the Court can see, the July 2007 bill includes a section on the left-side on the face of the bill for "Account Information." In this section, on the July 2007 bill, Defendants (Comcast) makes no reference whatsoever to the significant change in the terms of Ms. Rogers account that it proposes via imposition of an arbitration agreement. There is no note or mention of any kind that there is any enclosure with the bill that changes the terms of Ms. Rogers' agreement for services with Comcast. Rather, all that is expressed about "Account Information" is "Thank you for being a Comcast customer."

As the Court can plainly ascertain, there was an abundance of room on the bill to include some language advising Plaintiffs' of the significant change to their "Account Information" via imposition of an arbitration agreement. If some information about the change was discussed on the statement in the "Account Information" section, it would be believable that the arbitration notice was mailed as claimed by Comcast, since if somehow the notice pamphlet was not enclosed, customers would at least be on notice that there should have been an arbitration notice enclosure, and they could hardly claim they had no idea about the mailing of change of terms. But Comcast conveniently omitted any reference to this significant change in terms via the arbitration notice in the "Account Information" section. This seems to beg the question - if Comcast is not going to use the "Account

Information" section to provide information or notice about significant changes to a customer's account, like the imposition of an arbitration agreement, why have the section at all?

Below the "Account Information" section in the July, 2007 statement, there is another "Demand more at Comcast" section. In this section, Comcast devotes over an inch of space to advising Ms. Rogers that she should:

> "Demand more at Comcast. Get your cable questions answered quickly over the Internet. Go to www.comcast.com, choose Support & Service under the Comcast logo, click on Contact Support, and follow the link titled E-mail Us. Within 24 hours, you will receive a reply to your question."

Ms. Rogers also references and discusses her August 2007 bill from Comcast, a copy of which is also attached to her affidavit. In that bill, Comcast repeats the same "Account Information" and "Demand more at Comcast" information as the July bill, but it adds to the "Demand more at Comcast" section another inch of information providing that:

> "Do you know you have options to help determine which programming is appropriate for your family? Visit http://www.comcast.com/corporate/Customers/Parental Controls.html to learn more about parental control features available as part of your Comcast Cable Services or call Customer Service."

How many customers need parental controls? Now how many does the arbitration agreement affect - all of them. An inch for parental controls, not a peep about arbitration.

Perhaps most interestingly, in Ms. Rogers' October, 2007 Comcast bill, Comcast includes a prominent notation in the

"Demand more at Comcast" section that "Starting November 1, the late fee will change from $5.00 to $7.00." Obviously then, Comcast knows the importance of advising its customers about even minor changes to their account on the face of their bill, like a $2,00 increase in a late fee. Its not reasonable or acceptable then that Comcast conveniently fails to disclose in any manner on the face the bill a huge change to the terms of its customers' service that has tremendous potential impact on their rights, duties and obligations. Total silence about arbitration (and the deeply embedded class action waiver). Prominent display of the additional $2.00 late fee.

All three named Plaintiffs in this cause have provided in their affidavits that their July, 2007 (and all other) bills did not have any disclosure on its face about the imposition of the arbitration agreement. Under the totality of circumstances, it is not unreasonable for the Court to find Plaintiffs' claims that they did not receive the arbitration notice enclosed with their July, 2007 bills to be believable.

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, a district court must compel arbitration and stay proceedings if the parties have agreed to arbitrate their dispute. 9 U.S.C. § 2, 3. However, if the validity of the arbitration agreement is in issue, a district court must first decide if the arbitration clause is enforceable against the parties. *Id.* at §4; *Rivera v. AT&T Corp.*, 420 F. Supp 2d 1312,

1318 (S.D. Fla.); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) (if making of an arbitration agreement is an issue "the federal court may proceed to adjudicate it"); *Chastain v. The Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 853 (11th. Cir. 1992) (Parties cannot be forced to arbitrate where they did not agree to do so, and the court must first determine if an arbitration agreement exists before sending a case for arbitration and ending litigation).

In a case where a party seeking to avoid arbitration (in this case Plaintiffs) has not actually signed any contract requiring arbitration (as in this case where there is no signed contract, just a unilaterally mailed notice), there is no presumptively valid contract that triggers a district court's duty to compel arbitration. *See Chastain* at 854. Therefore, before sending any case to arbitration, *the district court itself* must first decide whether the non-signing party is bound to the contractual language. *Id.* (emphasis in original).

"To make a genuine issue entitling Plaintiffs to a trial by jury [on the arbitrability question], an unequivocal denial that the arbitration agreement had been made is needed, and some evidence should be produced to substantiate the denial." *Id.* (quotations omitted). In this case, Plaintiffs each and all attest in their affidavits that they received their July 2007 Comcast statements, but that nowhere enclosed in the envelopes containing the statements was the arbitration notices. They each

further attest that nowhere on the face of their bills was it stated that an arbitration notice was enclosed, or that there was any change to their service agreements with Comcast involving arbitration or class action waivers so as to alert them that, if there was not a notice enclosed, there should have been. Plaintiff Rogers further attaches copies of several bills demonstrating the fact. Under the circumstances, the matter of whether Plaintiffs' have agreed to arbitrate disputes with Comcast needs to be referred for a jury to determine whether arbitration should be compelled by the Court.

## II. The Arbitration Agreement is invalid because the embedded class action waiver provision of the Agreement is unenforceable.

The arbitration agreement at issue contains a class action waiver provision that intends to prohibit Comcast customers from using or participating in any class action mechanism for resolving any disputes with Comcast. Assuming for argument sake that a jury were to decide that Plaintiffs did in fact receive the arbitration notice at issue, provision "i" of the purportedly-mailed "Arbitration Notice" (Exhibit B to the Defendants' "Declaration of Bill Ferry") provides that:

"if the class action waiver clause is found to be illegal and unenforceable, the entire Arbitration Provision [Arbitration Agreement] will be unenforceable, and the dispute will be decided by a court."

The class action waiver provision is unenforceable and, as such, the entire arbitration agreement, by its own terms, is

unenforceable and invalid, and this cause is due to remain before this Court to be tried to conclusion.

The class action waiver provision is unenforceable because it is unconscionable. In Florida (the only state law that would govern Plaintiffs' and all future-intended class members' rights to relief in this cause), a court may properly decline to enforce a contract on the ground this it is unconscionable. *E.g.,* *Powertel, Inc. v. Bexley*, 743 So.2d 570, 574 (Fla. 1st DCA 1999). To support a determination of unconscionability, the Court must find that the contract is both procedurally unconscionable and substantively unconscionable. *E.g., id.* The procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms. *Id.* The substantive component focuses on the agreement itself. *Id.* A case is made out for substantive unconscionability by showing that "the terms of contract are unreasonable and unfair." *Id.* (quotation in original).

> **A.  The class action waiver is procedurally unconscionable because the class action waiver is deceptively induced through a scheme by Comcast to hide from customers the true affect of the Arbitration Notice.**

A contract is procedurally unconscionable if, *inter alia*, important terms are "hidden in a maze of fine print and minimized

by deceptive sales practices." *Id.* (citations omitted). In this case, a careful read of the "Arbitration Notice" at issue shows a very carefully contrived attempt on behalf of Comcast to make sure that the full effect of the change in terms (the imposition of the Arbitration Agreement and embedded class action waiver) was minimized in importance and hidden from the customer. Nowhere in the entire "Arbitration Notice" is it stated that any type of dispute "will" be settled by arbitration. Rather, it says on several occasions that disputes "may" be settled by arbitration, or other language is used to suggest that arbitration is not really mandatory. This softer, less alarming "may" or similar language is used throughout the Arbitration Notice in place of affirmative and unambiguous "will" or "shall" language. On page 1 of the Notice customers are told that the terms of the Notice "*may* have a substantial impact on the way in which you or Comcast will resolve any dispute with one another." May? In paragraph a., it says "you or Comcast *may* elect to arbitrate ...." In paragraph d., it provides that "if you or Comcast *elect* . . . arbitration . . . the party initiating arbitration *may* select from the following arbitration organizations . . . ." This lack of affirmative language can easily lead a customer to think that the Arbitration Notice is not something they need to worry about, or that they need to opt-out of. There is no warning that your rights "will be substantially affected." No, your rights only "may" be

substantially affected, and then only if someone "may" "elect" arbitration. The Arbitration Notice is deceptive in how it is "sold" to customers. Important terms - the mandatory nature of the arbitration, and especially the class action waiver, and how customers' rights <u>are</u> (not may be) affected - are hidden and minimized, which makes the Arbitration Notice and particularly the hidden class action waiver embedded in it, discussed in more detail *infra,* procedurally unconscionable under *Powertel.*

> **B.** **The class action waiver is also procedurally unconscionable because Comcast purportedly mailed the Arbitration Notice with its customer billings, but failed to make note on the bills themselves that the Notice was enclosed, or in the alternative, to emphasize on the cover of or introduction to the Arbitration Notice that the notice involved a substantial change as to customers' class action participation rights.**

As Plaintiffs have set forth in their affidavits, their July 2007 Comcast bill (and the bills for months around that time) did not contain any type of notice that the Arbitration Notice was enclosed. Comcast has not contended that it notified customers in any manner on the <u>face</u> of their July 2007 bills. It alleges that it simply included the "Arbitration Notice" in the envelope with the bill.

Comcast contends that the insert it mailed is the pamphlet attached as Exhibit B to the "Declaration of Bill Ferry" filed with the Court. Page one of this Exhibit B shows a black rectangle on the right side of the page with "Arbitration Notice"

printed in the upper left corner and "Comcast" printed in the lower right corner. This black rectangle is actually the first page of the Arbitration Notice. The language in the rectangle to the immediate left of the black rectangle is actually the last page of the Arbitration Notice pamphlet. When mailed, this last page is folded under the black rectangle page. Therefore, when the arbitration notice is mailed in the envelope with the customer's bill, it is folded to measure 6 13/16 inches by 3 5/8 inches in size (the size of the black rectangle), and upon removing the pamphlet from the envelope, a customer would only first understand the pamphlet to provide "Arbitration Notice."[1]

Courts recognize that the mailing of pamphlets to customers with their billings is so routine in today's mailing habits that 90 percent of people just throw the pamphlets away without reading them. *Powertel* at 575. Because of this, to avoid procedural unconscionability problems in Florida, businesses wishing to send out significant changes to dispute resolution rights (like arbitration agreements and class action waiver provisions) enclosed with monthly bills need to take special action to make certain that customers are aware of the clauses and the conditions that are changing. *See id.* Where such changes are intended as to class action waivers, the business should either note the change on the bill, or use bold print of a

---

[1] The undersigned has an original Arbitration Notice pamphlet for the Court to review, should the Court desire.

specific heading about the class action waiver on the pamphlet, or at least state via a special notice in the pamphlet itself to the affect that "this pamphlet contains important changes about your class action rights" or similar. *See id.* at 576-576, (quotations added)(appeals court agreeing with trial court's methods of determining whether mailed pamphlet notice imposing arbitration was sufficient and finding pamphlet left many customers unaware of change, and explaining that the trial court's standard for requiring the business to specially draw customers' attention to any fundamental change in contract terms, not just an arbitration change, was valid).

In this case, as discussed *supra*, the bills for service enclosed with the mailed notice made no mention whatsoever of any proposed contract change, or of the inclusion of the Arbitration Notice pamphlet. The cover of the pamphlet mailed by Comcast says only "Arbitration Notice" and makes no mention of the class action waiver embedded deeply therein and that is hard to notice.

Furthermore, the first substantive page of the Arbitration Notice says only as follows as is relevant here:

> NOTICE FROM COMCAST REGARDING ARBITRATION. THIS NOTICE CONTAINS AN IMPORTANT CHANGE TO YOUR CUSTOMER OR SUBSCRIBER AGREEMENT WITH COMCAST ("THE AGREEMENT"). PLEASE NOTE THAT THIS CHANGE RESTATES AND SUPERSEDES ANY PRE-EXISTING PROVISION IN THE AGREEMENT CONCERNING ARBITRATION . . . ."

(emphasis added) Nowhere in this introductory paragraph, where the language is bolded and capitalized to grab the customer's attention, does it suggest that the notice is about more than

<u>arbitration</u>. <u>No hint of a suggestion is made that a customer's</u> <u>rights to class action relief are being dramatically changed via</u> <u>total elimination</u>. <u>Not until paragraph f., 4 four pages later,</u> <u>in a paragraph titled only "Restrictions," **not** "Class Action</u> <u>Waiver" or something to that effect, is the customer finally</u> <u>advised that they are waiving class action rights</u>.

Comcast cannot trick customers into believing that the "Arbitration Notice" pamphlet is only about arbitration, and then claim that the notice is effective to waive a customer's right to class action relief. With the way it presented the notice to its customers, Comcast affirmatively led its customers down a path to believing that the notice was only about arbitration. The standard of *Powertel* is that the class action waiver is procedurally unconscionable if the method of providing the notice by Comcast "may have left many customers unaware" that they were waiving their rights to class action relief. *See Powertel* at 575. It did, and the class action waiver, therefore, is procedurally unconscionable.

> **C.** **The class action waiver is also substantively unconscionable, and Comcast improperly skips over the Eleventh Circuit's recent pronouncement in this regard in a case where Comcast was again the Defendant.**

What constitutes a substantively unconscionable agreement can be somewhat amorphous in Florida. However, one standard is that an agreement is substantively unconscionable if the terms

are so outrageously unfair as to shock the judicial conscience. *E.g.*, *Bland v. Health Care and Retirement Corporation of America*, 927 So.2d 252, 256 (Fla. 2d DCA 2006)(quotations omitted). Put another way, a substantively unconscionable contract is one that "<u>no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other</u>." *Id.* (quotations omitted)(emphasis added).

Unconscionability in Florida can be a bit "chameleon-like" as it can be so "vague . . . that neither the courts, practicing attorneys nor contract draftsmen can determine with any degree of certainty. . . when it will apply in any given situation." *Gainesville Health Care Center, Inc. v. Weston*, 857 So.2d 278, 283 (Fla. 1st DCA 2003). Fortunately, specifically as to class action waivers in Comcast arbitration agreements, the Eleventh Circuit has essentially resolved the question.

In *Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007), a case decided after the instant suit was filed and which is quickly passed over by Defendants in their memorandum in support of their motion, the Eleventh Circuit was dealing with the issue of the validity of class action waivers in Comcast's arbitration agreements sent to customers in Georgia.[2] In *Dale*, the court had

---

[2] In its memorandum in this case, Comcast says that one reason why *Dale* does not apply is that, in *Dale*, the customers did not have the option to reject the arbitration agreement. Whether that is indeed the case is not discussed in *Dale*. Furthermore, the *Dale* court never suggests that whether customers have an option to "opt-out" makes a difference in the analysis or holdings of *Dale*.

to determine whether a Comcast embedded class action waiver in an arbitration agreement was substantively unconscionable under Georgia law.

As the *Dale* court explained, Georgia law (much like Florida law) has various standards for unconscionability, but one is that, in Geogia, a contract is substantively unconscionable if the contract is "such an agreement as no sane man not acting under a delusion would make and that no honest man would take advantage of." Thus, as this Court can plainly read, Florida's definition of substantive unconscionability does not differ effectively in scope from Georgia's. The standard for a complaining party, such a Plaintiffs in this case, is high in either state. However, *Dale* makes it abundantly clear that Comcast's class action waiver in Plaintiffs' arbitration agreement is substantively unconscionable.

In *Dale*, the court explained that Comcast's class action waiver was substantively unconscionable for several reasons. First, *Dale* explained that the United States Supreme Court and the Eleventh Circuit recognize that public policy supports the need for class actions in certain types of claims, especially where small recoveries for individual plaintiffs do not provide an incentive to file individual lawsuits, and where the cost and effort of investigating and initiating a claim may be greater than the plaintiff's stake in the recovery. *See Id.* Second, the *Dale* court found that it was unconscionable for Comcast to

provide in its arbitration agreement that subscribers had to pay for their own attorney's fees and costs (other than filing and arbitrator fees paid by Comcast) if they win. Comcast's arbitration agreement in this case provides the same thing. Indeed, the language appears to be exactly the same in this regard.

In reaching these conclusions, the *Dale* court found that a trial court, in deciding whether a class action waiver was substantively unconscionable, has to look at the totality of the circumstances. These circumstances can include the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorney's fees and other costs and thus obtain legal representation, the practical affect the waiver will have on a company's ability to engage in unchecked market behavior, and public policy concerns. *Id.*

In the instant case, each of the named Plaintiff's claims is necessarily small. Plaintiffs each subscribe to Comcast Digital Cable televison packages and pay a good sum per month for the services they receive. Their "ON-DEMAND" service, admittedly, is a relatively small, but valuable part of their service. On a monthly basis, each Plaintiff has stated in their affidavit that they feel they have been "overcharged" due to their poor "ON-DEMAND" service in the amount of between $5.00 and $9.00 per month. This equates to between $60 and $108 per year. No

Page 16 of 20

plaintiff is going to file a lawsuit against Comcast for such a small amount. Just the filing fee for a small claims suit in Duval County itself for a claim around this size is between $56 and $81.

Furthermore, in this case, just like in *Dale*, it will be difficult if not impossible for Plaintiffs to obtain legal representation. Plaintiffs in this case have sued Comcast under a theory of breach of contract and for violations of Florida's Deceptive and Unfair Trade Practices Act (DUTPA). DUTPA does provide for prevailing party attorneys fees. However, Plaintiffs' prevailing on their DUTPA claim is far from assured. To do so, they have to prove not only that Comcast failed to provide "ON-DEMAND" service as promised, but that Comcast engaged in actions that were fraudulent and deceptive in inducing Plaintiffs to subscribe to their Digital Cable services. Where a difficult challenge of proof applies to a plaintiff's claim, it is not established that the plaintiff can secure representation to prosecute the claim, which weighs against finding a class action waiver. *See id.* (where state law allows for attorneys fees recovery only where bad faith is shown, despite the statutory provision for fees, it is necessarily difficult for an individual Comcast subscriber to obtain legal representation and the class action waiver fails).

Additionally, and highly relevant in this case, the easier-won and easier-proved claim of Plaintiffs in this matter is their

count for breach of contract. This is the "easy" count, the DUTPA count is "hard" one. Such breach of contract count does not have any vehicle for the statutory recovery of attorneys' fees and Plaintiffs have no realistic chance at motivating an attorney to accept the representation and prosecute it, absent a class action mechanism. Thus, on this basis alone, *Dale* mandates that the class action waiver must fail, since <u>*Dale* expressly</u> <u>recognizes that if it is difficult for a single Comcast</u> <u>subscriber to obtain representation, Comcast can engage in</u> <u>unchecked market behavior that may be unlawful</u>. *Id.* "Corporations should not be permitted to use class action waivers as means to exculpate themselves from liability for small-value claims."

Finally, <u>and perhaps even most importantly</u>, the class action waiver in this case is unquestionably substantively unconscionable because the Arbitration Agreement provides at paragraph f 1. that customers have only 1 year from the date of any occurrence to pursue arbitration as to any dispute with Comcast. Under DUTPA a person would normally have four (4) years to file a lawsuit to vindicate their rights. Fla. Stat. § 95.11 (f) or (p). <u>An individual cannot waive the protection of DUTPA</u> <u>which is designed to protect both **the public** and the individual</u>. *E.g., Holt v. O'Brien Imports of Ft. Myers, Inc.*, 862 So.2d 87, 89 (Fla. 2d DCA 2003). Therefore, the inability of Plaintiffs to seek any relief after 1 year from an occurrence invalidates any

waiver of their right to participate in a class action where they could have their rights vindicated for the whole 4 year limitations period. *See id.* [3]  Thus, there is a substantial public policy reason to invalidate the class action waiver, and it is obvious that the *Dale* court places great emphasis on public policy reasons for invalidating class action waivers.  *Dale* holds that a class action waiver should be struck down if "Plaintiffs would be unable to vindicate their statutory rights and the social goals of [state laws] . . . would be frustrated because of the 'enforcement gap' created by the *de facto* liability shield" that Comcast is trying to create by limiting the time period for customers to seek redress of wrongs.  *See id. quoting with approval Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006)(yet another Comcast arbitration notice case).

---

[3] *Holt* also expressly provides that an arbitration agreement that does not provide for injunctive or declaratory relief under DUTPA is unenforceable because DUTPA provides that a plaintiff has the right to seek such relief.  In this case, the Arbitration Agreement at issue is silent as to whether a Comcast customer could get injunctive or declaratory relief in an arbitration proceeding, but it suggests that a customer could not. Paragraph e. of the Arbitration Agreement provides that a party can only appeal the arbitration award if the award exceeds $75,000.  The silence as to appealabilty of any injunction suggests that Comcast does not intend to have arbitrators issue injunctions or declaratory judgments.  If so, then the class action waiver is further unconscionable under *Holt* and *Dale* because per the rule from *Holt*, if injunctive and declaratory relief is not available, the class action waiver in unenforceable under *Dale* since in a class action these rights could be vindicated.  Finally, even if Comcast intends that injunctive and declaratory relief is available in the Arbitration Agreement, the class action waiver should still fail since any DUTPA injunctive or declaratory judgment award without $75,000 in damages would be unappealable, a result, once again, that is not acceptable under DUTPA where such rights cannot be waived where the public interest is at stake.

## CONCLUSION

The Court should find that the class action waiver provision of the Arbitration Agreement is <u>legally</u> invalid as it is procedurally and substantively unconscionable. Since this is the circumstance, the entire Arbitration Agreement, by its terms, must fail, and the Court should **DENY** Comcast's motion to compel arbitration and stay this case.

Should the Court not be inclined, or not be inclined at this time, to find the class action waiver invalid and the Arbitration Agreement void, then the Court should proceed immediately to a trial on the <u>factual</u> issue of whether or not Plaintiffs are bound by the arbitration agreement.

**KATTMAN & PINAUD**
Professional Association

**Donald E. Pinaud, Jr.**
Florida Bar No.: 111694
Trial Counsel
4069 Atlantic Blvd.
Jacksonville, Florida 32207
(904) 398-1229
(904) 398-1568 (fax)
Attorneys for Plaintiffs

IN THE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JASCKSONVILLE DIVISION

**BRIAN D. SANDERS, MARILYN S.
ROGERS** and **JOAN RAY,** on their
behalf and on behalf, as
representatives, of **A CLASS
OF SIMILARLY SITUATED COMCAST
SUBSCRIBERS,**

CASE NO.: 3:07-cv-918-J-33HTS

Plaintiffs,

**CLASS REPRESENTATION**

v.

**COMCAST CABLE HOLDINGS, L.L.C.;
COMCAST CABLE COMMUNICATIONS
HOLDINGS, INC.; COMCAST
OF ARKANSAS/FLORIDA/LOUISIANA/
MINNESOTA/MISSISSIPPI/TENNESSEE,
INC.; COMCAST OF GREATER FLORIDA/
GEORGIA, INC.; COMCAST OF
FLORIDA/GEORGIA, L.L.C.;** and
**COMCAST CORPORATION,**

Defendants.

_____/

## EXHIBIT A - AFFIDAVIT OF MARILYN S. ROGERS IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION

COUNTY OF DUVAL)

STATE OF FLORIDA)

Before me, the undersigned authority, did appear Marilyn S.
Rogers, who swore and affirmed that the following is true,
accurate and complete to the best of her knowledge and belief:

1.   My name is Marilyn S. Rogers.  My residence address is

4804 Windrush Lane, Jacksonville, Florida 32217. I am over eighteen years of age.

2. I am one of the named Plaintiffs in this lawsuit. I have personal knowledge of the facts set forth in this affidavit.

3. I am a Comcast cable television customer who subscribes to a Comcast Digital Cable package as defined in my complaint. As part of my service, I receive and subscribe to "ON-DEMAND" services as explained and defined in my complaint.

4. In the envelope I received for my July 2007 bill for Comcast services I did not find enclosed the Arbitration Notice pamphlet described by Comcast in its motion to compel arbitration, or any other type of arbitration notice or agreement, or any notice of or change of any of the terms to my agreement with Comcast for Comcast to provide me with cable television services. The envelope I received with my June 2007, August 2007 and September 2007 bills for Comcast services likewise did not contain any such notices or agreements.

5. On the face of my June 2007, July 2007, August 2007 and September 2007 bills from Comcast there was nowhere noted that Comcast was enclosing the stated pamphlet or

was changing the terms of my customer agreement with Comcast as to how disputes between me and Comcast would be resolved in the future. Specifically, there was no notation on any bill that Comcast was seeking to have disputes submitted to arbitration or that it was seeking to have me waive my rights to participate in any type of class action.

6. Attached to this affidavit are true and accurate copies of the face page of my July 2007, August 2007, September 2007 and October 2007 Comcast billing statements. The language on the face of these statements speaks for itself.

7. During every month that I have subscribed to Comcast Digital Cable services with "ON-DEMAND" the "ON-DEMAND" feature has either not worked at all or has worked with such infrequency or unreliability to render it completely or mostly useless oftentimes. Comcast does not set forth for me the value of the "ON-DEMAND" service or how much of what I pay for cable television services is spent for "ON-DEMAND." However, if I were to assign a value to the services that I have failed to receive, considering the totality of the services that Comcast provides me, I would estimate that I have been overcharged for the malfunctioning service in the

approximate amount of $5.00 to $9.00 per month

depending on how the feature functioned in any given

month.

FURTHER AFFIANT SAITH NOT.



MARILYN S. ROGERS


SWORN TO AND SUBSCRIBED BEFORE ME this 6th day of November,

2007, at Jacksonville, Duval County, Florida, by the above-stated

affiant who is personally known to me and who did take an oath.

_____
NOTARY PUBLIC - STATE OF FLORIDA

My Comission expires:

DONALD E. PINAUD, JR.
MY COMMISSION # DD321931
EXPIRES: July 10, 2008
Fl. Notary Discount Assoc. Co.

# (Comcast.

*0009493
P.O. BOX 551217, JACKSONVILLE, FL  32255-1217
8495 7400 JW RP 02 07032007 YNNYNY
#BWNJJQR
#1504258988000314#
MARILYN ROGERS
4804 WINDRUSH LN
JACKSONVILLE FL  32217-4537

July 02, 2007
## Statement of Service

Account no.
**8495 74 101 1999681**
**Marilyn Rogers**

Contact us
Online at: **www.comcast.com/support**
By Email at: **www.comcast.com/contactus/**
Live Chat at: **www.comcastsupport.com/chat**

You can call 24 hours a day, 7 days a
week. 904-374-8000.

✓indicates the Comcast
services you subscribe to

## Account Information

Thank you for being a Comcast customer.

## Demand more at Comcast

Get your cable questions answered quickly over the Internet. Go to
www.comcast.com, choose Support & Service under the Comcast
logo, click on Contact Support, and follow the link titled E-mail
Us. Within 24 hours, you will receive a reply to your question.

## Summary  *See the back for details*
### Billed from 07/11/07 - 08/10/07

| | |
|---|---|
| Previous balance | $102.50 |
| Payments received | -102.50 |
| Comcast Cable Television | 101.40 |
| Taxes, surcharges, and fees | 14.88 |

| **Total due by 07/22/07** | **$116.28** |
|---|---|

*Pd 7/15/07*
*# 940*

**Visit us on the web at www.comcast.com**

# Comcast.



✓ indicates the Comcast
services you subscribe to

*0034273

P.O. BOX 551217, JACKSONVILLE, FL  32255-1217
8495 7400 JW RP 02 08032007 NYYNNY
#BWNJJQR
#1504258988000314#
MARILYN ROGERS
4804 WINDRUSH LN
JACKSONVILLE FL  32217-4537

Account no.
**8495 74 101 1999681**
**Marilyn Rogers**

Contact us
Online at: www.comcast.com/support
By Email at: www.comcast.com/contactus/
Live Chat at: www.comcastsupport.com/chat

You can call 24 hours a day, 7 days a
week. 904-374-8000.

## Account Information

Thank you for being a Comcast customer.

## Demand more at Comcast

Get your cable questions answered quickly over the Internet. Go to
www.comcast.com, choose Support & Service under the Comcast
logo, click on Contact Support, and follow the link titled E-mail
Us. Within 24 hours, you will receive a reply to your question.

Do you know you have options to help determine which
programming is appropriate for your family? Visit
http://www.comcast.com/Corporate/Customers/ParentalControls.
html/ to learn more about parental control features available as part
of your Comcast Cable Services or call Customer Service.

## Summary  *See the back for details*

**Billed from 08/11/07 - 09/10/07**

| | |
|---|---|
| Previous balance | $116.28 |
| Payments received | -116.28 |
| Comcast Cable Television | 77.45 |
| Taxes, surcharges, and fees | 11.28 |

| **Total due by 08/22/07** | **$88.73** |
|---|---|

*Pd 8/13/07*
*#958*

# Comcast.

*0009886

P.O. BOX 551217,JACKSONVILLE,FL  32255-1217
8495 7400 JW RP  02  09032007 YNYNYY
#BWNJJQR
#1504258988000314#
MARILYN ROGERS
4804 WINDRUSH LN
JACKSONVILLE FL 32217-4537

September 02, 2007

## Statement of Service

Account no.
**8495 74 101 1999681**
**Marilyn Rogers**

✓ indicates the Comcast
services you subscribe to

Contact us
Online at: **www.comcast.com/support**
By Email at: **www.comcast.com/contactus/**
Live Chat at: **www.comcastsupport.com/chat**

You can call 24 hours a day, 7 days a
week. 904-374-8000.

## Account Information

Thank you for being a Comcast customer.

## Demand more at Comcast

Get your cable questions answered quickly over the Internet. Go to
www.comcast.com, choose Support & Service under the Comcast
logo, click on Contact Support, and follow the link titled E-mail
Us. Within 24 hours, you will receive a reply to your question.

## Summary  *See the back for details*
### Billed from 09/11/07 - 10/10/07

| | |
|---|---|
| Previous balance | $88.73 |
| Payments received | -88.73 |
| Comcast Cable Television | 81.44 |
| Taxes, surcharges, and fees | 11.88 |

**Total due by 09/22/07** | **$93.32**

*9/13/07*
*# 976*

# Comcast

*0032879

P.O. BOX 551217,JACKSONVILLE,FL  32255-1217
8495 7400 JW RP  03  10042007 NYYNNY
#BWNJJQR
#1504258988000314#
MARILYN ROGERS
4804 WINDRUSH LN
JACKSONVILLE FL  32217-4537

ııllııılıılıılıılıılılıılıılılıılıılıılıllılıılılılıl

## Account Information

Thank you for being a Comcast customer.

## Demand more at Comcast

Starting November 1, the late fee will change from $5.00 to $7.00.

Get your cable questions answered quickly over the Internet. Go to www.comcast.com, choose Support & Service under the Comcast logo, click on Contact Support, and follow the link titled E-mail Us. Within 24 hours, you will receive a reply to your question.

October 03, 2007
## Statement of Service

Account no.
**8495 74 101 1999681**
**Marilyn Rogers**

Contact us
Online at: **www.comcast.com/support**
By Email at: **www.comcast.com/contactus/**
Live Chat at: **www.comcastsupport.com/chat**

You can call 24 hours a day, 7 days a week. 904-374-8000.

✓ indicates the Comcast
services you subscribe to

## Summary  *See the back for details*
### Billed from 10/11/07 - 11/10/07

| | |
|---|---|
| Previous balance | $93.32 |
| Payments received | -93.32 |
| Comcast Cable Television | 81.44 |
| Taxes, surcharges, and fees | 11.87 |
| **Total due by 10/23/07** | **$93.31** |

# Visit us on the web at www.comcast.com

IN THE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JASCKSONVILLE DIVISION

**BRIAN D. SANDERS, MARILYN S.
ROGERS** and **JOAN RAY,** on their
behalf and on behalf, as
representatives, of **A CLASS
OF SIMILARLY SITUATED COMCAST
SUBSCRIBERS,**

CASE NO.: 3:07-cv-918-J-33HTS

      Plaintiffs,

**CLASS REPRESENTATION**

v.

**COMCAST CABLE HOLDINGS, L.L.C.;
COMCAST CABLE COMMUNICATIONS
HOLDINGS, INC.; COMCAST
OF ARKANSAS/FLORIDA/LOUISIANA/
MINNESOTA/MISSISSIPPI/TENNESSEE,
INC.; COMCAST OF GREATER FLORIDA/
GEORGIA, INC.; COMCAST OF
FLORIDA/GEORGIA, L.L.C.;** and
**COMCAST CORPORATION,**

      Defendants.

_____/

### EXHIBIT B - AFFIDAVIT OF BRIAN D. SANDERS IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION

COUNTY OF DUVAL)

STATE OF FLORIDA)

    Before me, the undersigned authority, did appear Brian D. Sanders, who swore and affirmed that the following is true, accurate and complete to the best of his knowledge and belief:

    1.  My name is Brian D. Sanders.  My residence address is

1525 Avondale Avenue, Jacksonville, Florida 32205. I
am over eighteen years of age.

2. I am one of the named Plaintiffs in this lawsuit. I
   have personal knowledge of the facts set forth in this
   affidavit.

3. I am a Comcast cable television customer who subscribes
   to a Comcast Digital Cable package as defined in my
   complaint. As part of my service, I receive and
   subscribe to "ON-DEMAND" services as explained and
   defined in my complaint.

4. In the envelope I received for my July 2007 bill for
   Comcast services I did not find enclosed the
   Arbitration Notice pamphlet described by Comcast in its
   motion to compel arbitration, or any other type of
   arbitration notice or agreement, or any notice of or
   change of any of the terms to my agreement with Comcast
   for Comcast to provide me with cable television
   services. The envelope I received with my June 2007,
   August 2007 and September 2007 bills for Comcast
   services likewise did not contain any such notices or
   agreements.

5. On the face of my June 2007, July 2007, August 2007 and
   September 2007 bills from Comcast there was nowhere
   noted that Comcast was enclosing the stated pamphlet or

was changing the terms of my customer agreement with Comcast as to how disputes between me and Comcast would be resolved in the future. Specifically, there was no notation on any bill that Comcast was seeking to have disputes submitted to arbitration or that it was seeking to have me waive my rights to participate in any type of class action.

6.  During every month that I have subscribed to Comcast Digital Cable services with "ON-DEMAND" the "ON-DEMAND" feature has either not worked at all or has worked with such infrequency or unreliability to render it completely or mostly useless oftentimes. Comcast does not set forth for me the value of the "ON-DEMAND" service or how much of what I pay for cable television services is spent for "ON-DEMAND." However, if I were to assign a value to the services that I have failed to receive, considering the totality of the services that Comcast provides me, I would estimate that I have been overcharged for the malfunctioning service in the approximate amount of $5.00 to $9.00 per month, depending on how the feature functioned in any given month.

FURTHER AFFIANT SAITH NOT.

BRIAN D. SANDERS

SWORN TO AND SUBSCRIBED BEFORE ME this 6th day of November, 2007, at Jacksonville, Duval County, Florida, by the above-stated affiant who is personally known to me and who did take an oath.



NOTARY PUBLIC - STATE OF FLORIDA

My Comission expires:

DONALD E. PINAUD, JR.
MY COMMISSION # DD321931
EXPIRES: July 10, 2008
Fl. Notary Discount Assoc. Co.

**BRIAN D. SANDERS, MARILYN S.
ROGERS** and **JOAN RAY,** on their
behalf and on behalf, as
representatives, of **A CLASS
OF SIMILARLY SITUATED COMCAST
SUBSCRIBERS,**

CASE NO.: 3:07-cv-918-J-33HTS

      Plaintiffs,

**CLASS REPRESENTATION**

v.

**COMCAST CABLE HOLDINGS, L.L.C.;
COMCAST CABLE COMMUNICATIONS
HOLDINGS, INC.; COMCAST
OF ARKANSAS/FLORIDA/LOUISIANA/
MINNESOTA/MISSISSIPPI/TENNESSEE,
INC.; COMCAST OF GREATER FLORIDA/
GEORGIA, INC.; COMCAST OF
FLORIDA/GEORGIA, L.L.C.;** and
**COMCAST CORPORATION,**

      Defendants.

_____/

### EXHIBIT C - AFFIDAVIT OF JOAN RAY IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION

COUNTY OF DUVAL)

STATE OF FLORIDA)

      Before me, the undersigned authority, did appear Joan Ray,
who swore and affirmed that the following is true, accurate and
complete to the best of her knowledge and belief:

      1.   My name is Joan Ray.  My residence address is 469

Bentwood Lane, #D, Orange park, Florida 32073. I am
over eighteen years of age.

2.  I am one of the named Plaintiffs in this lawsuit. I
    have personal knowledge of the facts set forth in this
    affidavit.

3.  I am a Comcast cable television customer who subscribes
    to a Comcast Digital Cable package as defined in my
    complaint. As part of my service, I receive and
    subscribe to "ON-DEMAND" services as explained and
    defined in my complaint.

4.  In the envelope I received for my July 2007 bill for
    Comcast services I did not find enclosed the
    Arbitration Notice pamphlet described by Comcast in its
    motion to compel arbitration, or any other type of
    arbitration notice or agreement, or any notice of or
    change of any of the terms to my agreement with Comcast
    for Comcast to provide me with cable television
    services. The envelope I received with my June 2007,
    August 2007 and September 2007 bills for Comcast
    services likewise did not contain any such notices or
    agreements.

5.  On the face of my June 2007, July 2007, August 2007 and
    September 2007 bills from Comcast there was nowhere
    noted that Comcast was enclosing the stated pamphlet or

was changing the terms of my customer agreement with Comcast as to how disputes between me and Comcast would be resolved in the future. Specifically, there was no notation on any bill that Comcast was seeking to have disputes submitted to arbitration or that it was seeking to have me waive my rights to participate in any type of class action.

6. During every month that I have subscribed to Comcast Digital Cable services with "ON-DEMAND" the "ON-DEMAND" feature has either not worked at all or has worked with such infrequency or unreliability to render it completely or mostly useless oftentimes. Comcast does not set forth for me the value of the "ON-DEMAND" service or how much of what I pay for cable television services is spent for "ON-DEMAND." However, if I were to assign a value to the services that I have failed to receive, considering the totality of the services that Comcast provides me, I would estimate that I have been overcharged for the malfunctioning service in the approximate amount of $5.00 to $9.00 per month, depending on how the feature functioned in any given month.

FURTHER AFFIANT SAITH NOT.

_____
JOAN RAY

Page 3 of 4

SWORN TO AND SUBSCRIBED BEFORE ME this 6th day of November, 2007, at Jacksonville, Duval County, Florida, by the above-stated affiant who is personally known to me and who did take an oath.



_____
NOTARY PUBLIC - STATE OF FLORIDA

My Comission expires:

DONALD E. PINAUD, JR.
MY COMMISSION # DD321931
EXPIRES: July 10, 2008
Fl. Notary Discount Assoc. Co.
1-800-3-NOTARY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 6, 2007, I filed the foregoing using the Court's CM-ECF system, which will automatically send a copy to David P. Draigh, Attorney for Defendants.

**Donald E. Pinaud, Jr.**
Fla. Bar No.: 111694
Attorney for Plaintiffs