UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRIAN D. SANDERS, MARILYN S. ROGERS,
and JOAN RAY, on their behalf and on
behalf, as representatives, of a
class of similarly situated Comcast
subscribers,

               Plaintiffs,

v.                            Case No.  3:07-cv-918-J-33HTS

COMCAST CABLE HOLDINGS, LLC, Et al.,

               Defendants.
_____/

**ORDER**

     This matter comes before the Court pursuant to Defendants'
Motion to Compel Arbitration and Stay Action (Doc. # 9) filed on
October 19, 2007.  Plaintiffs filed a response in opposition to
Defendants' motion on November 6, 2007 (Doc. # 11) and Defendants
filed a reply to Plaintiffs' response on November 16, 2007 (Doc. #
15).

     For the reasons that follow, Defendants' motion to compel
arbitration and motion to stay pending arbitration is granted.

I.   **Background**

     Plaintiffs initially filed their putative class action against
Defendants on August 22, 2007, in the Circuit Court of Duval
County, Florida. (Doc. # 1-2 at 11).  Defendants timely removed the
action to this Court pursuant to 28 U.S.C. §§ 1441, 1446. (Doc. #
1).  Plaintiffs filed an amended class action complaint against

Defendants on September 27, 2007 (the "Amended Complaint"). (Doc. # 2). Although Plaintiffs have styled this case as a class action, this Court has yet to determine whether the Amended Complaint meets the requirements for a class action suit pursuant to Rule 23 of the Federal Rules of Civil Procedure 23, and other governing authorities.[1]

The Amended Complaint names three Comcast customers, Brian Sanders, Marilyn S. Rogers, and Joan Ray[2] ("Plaintiffs") and charges that Defendants' "ON DEMAND" cable feature, paid for by Plaintiffs, was wrought with technological difficulties:

> Oftentimes, for the past several years, Comcast experienced, and continues to this very day to experience, inability to maintain the availability of ON DEMAND programming. ON DEMAND outages were, and are, so frequent, continuous, disruptive and lengthy that Class Members are often unable to utilize the ON DEMAND feature for any kind of meaningful period of time, or a substantial period of time, during a billing cycle. ON DEMAND outages are impossible for Class Members to plan for or anticipate. Outright outages or interruptions can

---

[1] Federal Rule of Civil Procedure 23(a) provides, "One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

[2] Comcast indicates that it is not sure of Plaintiff Joan Ray's identity. Comcast explains "Comcast cannot determine with certainty the identity of Plaintiff Joan Ray, who from the best of Comcast's knowledge, could be one of two individuals, either Joan B. Ray ("Joan B. Ray"), who became a subscriber of Comcast on February 3, 2005, or Joan Ray ("Joan Ray"), who became a subscriber of Comcast on December 18, 2006." (Doc. # 9 at 3).

> and do happen at any time . . . .Comcast lacks sufficient
> technological infrastructure and ability to accommodate
> the requests of the Class Members for ON DEMAND services
> when those Class Members request such ON DEMAND services.

(Doc. # 2 at ¶¶ 17-20).

Plaintiffs' Amended Complaint contains two counts based upon Defendants' allegedly defective ON DEMAND services.  In Count One, Plaintiffs allege that Defendants violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq. (FDUTPA)(Doc. # 2 at ¶¶ 23-36).  In Count Two, Plaintiffs allege that Defendants breached their contracts with Plaintiffs. (Doc. # 2 at ¶¶ 37-42). Defendants have not yet filed an answer.

## II. __Motion to Compel Arbitration and Stay Action__

Defendants filed the pending motion to compel arbitration on October 19, 2007.  Defendants assert that the allegations of the Amended Complaint are subject to arbitration and that the case should be stayed pending arbitration.  Plaintiffs, on the other hand, assert that they should not be compelled to arbitrate because Plaintiffs never signed an arbitration agreement and never consented to submit their disputes to arbitration.  Defendants do not contest the fact that Plaintiffs never signed an arbitration agreement.  Instead, Defendants argue that they mailed each Plaintiff a "Notice From Comcast Regarding Arbitration" (the "Arbitration Notice") and that such notice bound each Plaintiff to arbitrate the instant dispute.  Defendants explain that each Plaintiff was given a thirty-day opportunity to opt-out of the

terms of the Arbitration Notice, without affecting the status of the cable services provided to Plaintiffs, and that Plaintiffs did not opt out of the terms of the Arbitration Notice.

In support of these contentions, Defendants filed the sworn declaration of Bill Ferry, Comcast's Vice President of Governmental Affairs for the Coastal Region.   (Doc. # 9-2).   Mr. Ferry indicates:

> Pursuant to Comcast's usual practice for disseminating annual notices to subscribers via monthly billing inserts sent by first class mail, Comcast's billing service included a document titled "Notice From Comcast Regarding Arbitration" ("Arbitration Agreement") in the monthly bills for subscribers in the Coastal Region, including Sanders, Rogers, Joan B. Ray and  Joan Ray in July 2007.

(Doc. # 9-2 at ¶ 13).   Mr. Ferry further explains, "Comcast's usual practice for disseminating annual notices to subscribers is to include such notices with subscribers' monthly bills.   Monthly bills are sent to current subscribers by first class mail, and include a return address in the upper left corner of the mailing." (Doc. # 9-2 at ¶ 10).

The Arbitration Notice at issue has been filed with the Court and is four pages in length.   The Arbitration Notice contains the following salient provisions:

> This notice contains an important change to your customer or subscriber agreement with Comcast (the "Agreement"). Please note that this change to the Agreement as set forth below restates and supersedes any preexisting provision in the Agreement concerning Arbitration and takes effect thirty (30) days after this notice was mailed to you (the "Effective Date").   If you do not wish to be bound by this arbitration provision, you must

> notify Comcast in writing within thirty (30) days from
> the date that you first receive this notice . . . . Your
> decision to opt out of this arbitration provision will
> have no adverse effect on your relationship with Comcast
> or the delivery of services to you by Comcast. . . . If
> you do not opt out of arbitration in the manner indicated
> above your continued use of the service after the
> Effective Date shall be deemed to be your acceptance of
> this change.  This change may have a substantial impact
> on the way in which you or Comcast will resolve any
> dispute with one another.

(Doc. # 9-2 at 13).

Relevant to the instant suit, the Arbitration Notice contains

the following class action waiver which purports to bar class

actions against Defendants:

> All parties to the Arbitration must be individually
> named.  There shall be no right or authority for any
> claims to be arbitrated or litigated on a class action or
> consolidated basis or on bases involving claims brought
> in a purported representative capacity on behalf of the
> general public (such as private attorney general), other
> subscribers, or other persons similarly situated unless
> the statute under which you are suing provides otherwise.

(Doc. # 9-2 at 15).

The Arbitration Notice also provides that "Comcast will

advance all arbitration filing fees and Arbitrator's costs and

expenses upon your written request given prior to the commencement

of the arbitration." (Doc. # 9-2 at 15).

Plaintiffs assert that they never received the Arbitration

Notice: "Plaintiffs each and all attest in their affidavits that

they received their July 2007 Comcast statements, but that nowhere

enclosed in the envelopes containing the statements w[ere] the arbitration notices."[3]

In addition to asserting that there is, in fact, no agreement to arbitrate in this case, Plaintiffs also argue that the terms of the Arbitration Notice are invalid due to procedural and substantive unconscionability.  Among other arguments, Plaintiffs contend that the Arbitration Notice is substantively unconscionable because the Arbitration Notice bars class actions.  Further, Plaintiffs assert that the Arbitration Notice tries to conceal the prohibition of class actions, rendering the Arbitration Notice procedurally unconscionable.  The Court will address the arguments of the parties in turn.

### III. **Agreement to Arbitrate**

The Federal Arbitration Act (the "FAA") provides that a written arbitration "provision in any . . . contract evidencing a transaction involving commerce . . . is valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

---

[3] The Affidavit of Marilyn S. Rogers states, "In the envelope I received for my July 2007 bill for Comcast services I did not find enclosed the Arbitration Notice pamphlet described by Comcast in its motion to compel arbitration, or any other type of arbitration notice or agreement, or any notice of or change of any of the terms to my agreement with Comcast for Comcast to provide me with cable television services.  The envelope I received with my June 2007, August 2007 and September 2007 bills for Comcast services likewise did not contain any such notices or agreements. (Doc. # 11 at ¶ 4 p. 22).  The affidavits of Brain Sanders (Doc. # 11 at ¶ 4 p. 30) and Joan Ray (Doc. # 11 at ¶ 4 p. 34) contain similar averments.

for the revocation of any contract." 9 U.S.C. § 2.  The effect of Section 2 of the FAA is to "create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 460 U.S. 1, 24 (1983).  Section 3 of the FAA provides for the stay of proceedings in district court when an issue in the proceedings is referable to arbitration.  Section 4 of the FAA provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement.

A district court must compel arbitration and stay the underlying action if the parties had an earlier agreement to arbitrate their dispute. 9 U.S.C. § 3.  On this point, the FAA specifically states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Nevertheless, it is essential that this Court first determine whether the parties agreed to arbitrate the dispute at hand.  A court cannot require parties to arbitrate disputes that they have

not previously agreed to arbitrate. <u>See</u> <u>Telecom Italia v. Wholesale</u> <u>Telecom Corp.</u>, 248 F.3d 1109, 1114 (11th Cir. 2001)(internal citations omitted).

In the present case, Plaintiffs attest that they never received the Arbitration Notice, and Defendants assert that Plaintiffs are bound by the terms of the Arbitration Notice due to Plaintiffs' failure to opt out of the same. This Court must determine, from the present record, whether Plaintiffs can be bound to arbitrate by virtue of their failure to opt out of the terms of the Arbitration Notice and by virtue of their continued use of Comcast's services.

In the case of <u>Chastain v. The Robinson-Humphrey Company,</u> <u>Inc.</u>, 957 F.2d 851 (11th Cir. 1992), the Eleventh Circuit provided a roadmap for the adjudication of cases lacking a signed agreement to arbitrate. In <u>Chastain</u>, a securities firm moved to compel arbitration based on two customer service agreements, containing arbitration provisions, that were allegedly signed on behalf of, but not by, the customer herself. The customer alleged that her signature was forged on the first customer service agreement and that her signature did not appear at all on the second customer service agreement. The district court declined to compel arbitration, and the Eleventh Circuit affirmed.

The Eleventh Circuit instructed, "if the validity of the agreement to arbitrate is in issue, a district court, not a panel

-8-

of arbitrators, must decide if the arbitration clause is enforceable against the parties. . . . 'The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute'." Id. (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

The Chastain court continued its discussion with the oft-cited passage that follows:

> Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract *in general*. Because the making of the arbitration agreement *itself* is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests. The calculus changes when it is undisputed that the party seeking to avoid the arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of any agreement, *including the existence of an agreement to arbitrate*. Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, *the district court itself* must first decide whether or not the non-signing party can nonetheless be bound by the contractual language. In cases of this type . . . [t]o make a genuine issue entitling the party seeking to avoid arbitration to a trial by jury on the arbitrability question, an unequivocal denial that the agreement had been made is needed, and some evidence should be produced to substantiate that denial.

_Chastain_, 957 F.2d at 854 (emphasis in original)(internal citations omitted).

Despite the _Chastain_ court's sound admonitions, it is important to note that "no signature is needed to satisfy the FAA's written agreement requirement." _Caley v. Gulfstream Aero. Corp._, 428 F.3d 1359, 1369 (11th Cir. 2005). _Caley_ explains that "the plain language of Section 2 [of the FAA] requires that the arbitration provision be 'written.'  It does not, however, require that the agreement to arbitrate be signed by either party; nor does any other provision of the FAA." _Id._  Furthermore, as pointed out by Defendants, Under the 1996 amendments to the Cable Act, "a cable operator may provide notice of service and rate changes to subscribers using any reasonable written means at its sole discretion." 47 U.S.C. § 552(c).

Plaintiffs request that this Court empanel a jury to determine whether an agreement to arbitrate exists between the parties.  As noted above, the FAA provides that "if the making of the arbitration agreement . . . be in issue, the party alleged to be in default may . . . demand a jury trial on such issue." 9 U.S.C. § 4.  However, to warrant a jury trial, the Eleventh Circuit has required that the party seeking to avoid arbitration must "unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial." _Wheat, First Sec., Inc. v. Green_, 993 F.2d 814, 818 (11th Cir. 1993)(internal citations

omitted).  The party challenging the arbitration provision must create a genuine issue of fact presenting "enough evidence to make the denial colorable." <u>Chastain</u>, 957 F.2d at 855.

In this case, the Plaintiffs have filed affidavits in which each Plaintiff asserts that they never received the Arbitration Notice.  Plaintiffs also argue that the face of their Comcast cable bills did not indicate that the Arbitration Notice was enclosed with the bill.  This Court must determine whether Plaintiffs have met their burden to be entitled to a jury trial on the issue of whether they agreed to arbitrate.

The factually similar case of <u>Rivera v. AT&T Corp.</u>, 420 F. Supp. 2d 1312, 1320 (S.D. Fla. 2006) is particularly instructive. In <u>Rivera</u>, AT&T averred that it sent a customer service agreement ("CSA") to the plaintiffs, and that such CSA contained a binding arbitration clause.  The plaintiffs, as in the present case, generally swore that they never received the CSA containing arbitration language and that they never assented to arbitration. The court determined that the plaintiffs' declarations that they did not receive the CSA containing the arbitration clause were insufficient to overcome AT&T's averments that the CSA was mailed to the plaintiffs.  The court specifically ruled:

> It is undisputed that Plaintiffs Rivera and Daniel did not sign the CSA.  Accordingly, this Court must determine whether or not the unsigned arbitration provision can bind them.  Plaintiffs have denied their agreement to arbitrate their claims against AT&T, thereby meeting the first prong of the *Chastain/T&R* test.  However,

-11-

> Plaintiffs have not introduced evidence to substantiate their denial.  In response to AT&T's evidence that it mailed a CSA to Plaintiffs which never returned to AT&T, Plaintiffs simply state that they never received the CSA. This is insufficient to send the arbitrability question to a jury.  Moreover, AT&T has offered evidence that it included notices about the CSA in its own monthly billing statements, as well as those distributed by Bell South. Finally, Plaintiff Rivera admits that she continued AT&T service for more than a year and a half after AT&T mailed her a CSA, and Plaintiff Daniel offers no evidence as to when or if she discontinued service.

Rivera, 420 F. Supp. 2d at 1320 (internal citations omitted).

In reaching its determination to compel arbitration, the Rivera court relied upon Barnett v. Okeechobee Hosp., 283 F.3d 1232, 1239 (11th Cir. 2002), which states, "the common law has long recognized a rebuttable presumption that an item properly mailed was received by the addressee."  The Barnett court also determined, "a party's failure to uncover an item, which it was presumed to have received, does not mean that it never received the item and does not rebut the presumption of delivery."[4]

The Rivera court also found that the plaintiffs' continued use of AT&T services militated in favor of finding that the plaintiffs consented to the AT&T's terms and conditions of service as stated in the CSA, including the arbitration clause of the CSA.[5]

_____

[4] It should be noted that the Barnett case did not involve any arbitration issues.

[5] Defendants cite a number of cases in which arbitration was compelled over the objection of plaintiffs pursuant to customer service agreements not signed by plaintiffs. See, e.g., Boomer v. AT&T Corp., 309 F.3d 404, 416 (7th Cir. 2002)("the [customer
(continued...)

Similar to the holding in <u>Rivera</u>, this Court determines that denial of Plaintiffs' request for a jury trial is appropriate because Plaintiffs have not created a genuine issue of fact as to whether an agreement was reached between Plaintiffs and Defendants. Although Plaintiffs have filed affidavits denying that they received the Arbitration Notice, these affidavits do not rise to the level necessary to rebut the presumption of receipt created when such Arbitration Notices were mailed to Plaintiffs. Defendants assert that the Arbitration Notices were in the same envelope as the cable bills.   The cable bills were received and paid.

This Court finds that Defendants properly provided notice to Plaintiffs of its arbitration policy pursuant to the Cable Act, and Plaintiffs received the Arbitration Notice.   This Court further determines that Plaintiffs were given an opportunity to opt out of

---

[5](...continued)
service agreement] mailing constituted an offer and Boomer's continued use of AT&T services constituted acceptance. Consideration supported each party's promises . . . . Accordingly, the CSA constituted a contract, and as such established the terms and conditions governing AT&T's relationship with Boomer, one of which was an arbitration clause."); <u>Cunningham v. Van Ru Credit Corp.</u>, Case No. 06-10452, 2006 U.S. Dist. LEXIS (Nov. 12, 2006)(compelling arbitration where plaintiff received notice of arbitration provision and failed to opt out); <u>Mackey v. MBNA</u>, 343 F. Supp. 2d 966 (W.D. Wash. 2004)(customer sought to vacate arbitration award against him, claiming that he never received the arbitration notice that was mailed to him by the credit card company.   The court denied the motion to vacate, found that the credit card company validly amended their credit card agreement with plaintiff to include an arbitration provision.)

the agreement to arbitrate and that Plaintiffs did not opt out. Furthermore, this Court determines that Plaintiffs' continued use of Defendants' services and continued payment of their cable bills militates in favor of finding that Plaintiffs agreed to Defendants' terms, including arbitration of disputes such as the present one.[6]

Although this Court finds that Plaintiffs and Defendants reached an agreement to arbitrate, this Court will not enforce the agreement if it is unconscionable, as argued by Plaintiffs.

## IV.  **Unconscionability**

Under Florida law, Plaintiffs carry the burden of establishing that the arbitration provision at issue is both procedurally and substantively unconscionable.  Murphy v. Courtesy Ford, LLC, 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006); VoiceStream Wireless Corp. v. U.S. Communications, Inc., 912 So. 2d 34, 39 (Fla. 4th DCA 2005); See also Fonte v. AT&T Wireless Servs., Inc., 903 So. 2d 1019, 1025 (Fla. 4th DCA 2005).

"The procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms."  Voicestream, at 39 (quoting Powertel, Inc. v.

---

[6]   The Arbitration Notice states, "If you do not opt out of arbitration in the manner indicated above your continued use of the service after the effective date shall be deemed to be your acceptance of this change." (Doc. # 9-2 at 13).

Bexley, 743 So. 2d 570, 574 (Fla. 1st DCA 1999)).  "The test for substantive unconscionability is to determine if the terms of a contract are so outrageously unfair as to shock the judicial conscience." Voicestream at 40 (quoting Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 285 (Fla. 1st DCA 2003)).

### A.   Procedural Unconscionability

Plaintiffs assert that the Arbitration Notice is procedurally unconscionable because (1) important components of the agreement, such as a class action waiver, were "minimized in importance and hidden from the consumer;" (2) the Arbitration Notice deceptively used the "soft" term of "may" rather than the mandatory term of "will" to suggest that "arbitration is not really mandatory;" and (3) Comcast failed to note on the bill itself that the Arbitration Notice was enclosed in the same envelope. (Doc. # 11 at 9-13).

Plaintiffs' procedural unconscionability arguments are without merit.  As stated by a number of Florida courts, to determine procedural unconscionability, "a court must look to the circumstances surrounding the transaction to determine whether the complaining party had a meaningful choice at the time the contract was entered." Gainesville Health Care Ctr., Inc., 857 So. 2d at 284.  In this case, all relevant terms of the Arbitration Notice are prominently displayed.  The class action waiver is stated in all capital letters and can be found on the third page of the Arbitration Notice.

Even if it could be argued credibly that the class action waiver should have been on the first page of the Arbitration Notice, or that the Arbitration Notice should have been titled "Arbitration Notice and Class Action Waiver," Plaintiffs' arguments would still ring hollow.  This is because Plaintiffs were free to reject the terms of the Arbitration Notice without a single adverse consequence.  The Arbitration Notice was not presented on a take it or leave it basis.  To the contrary, Plaintiffs were free to take advantage of all of Comcast's services and leave out the provisions of the Arbitration Notice.

Thus, Plaintiffs' argument that the Arbitration Notice should have used mandatory terms, such as "shall" rather than soft terms, such as "may" must also fail.  By its own terms, the Arbitration Notice is not mandatory, each Plaintiff had the option to opt out and were given ample time to do so.  Accordingly, the Arbitration Notice correctly states that "this change *may* have a substantial impact on the way in which you or Comcast will resolve any dispute with one another." (Doc. # 9-2 at 13)(emphasis added).  Had Plaintiffs opted out of the terms of the Arbitration Notice, the manner in which Plaintiffs resolved disputes with Comcast would not be impacted.

Accordingly, this Court finds that the Arbitration Notice is not procedurally unconscionable.

B.   **Substantive Unconscionability**

Plaintiffs assert that the Arbitration Notice is substantively unconscionable because (1) it includes a class action waiver; and (2) imposes a one year deadline for Plaintiffs to pursue arbitration despite the fact that, under FDUTPA, Plaintiffs would have a four year statute of limitations.  The Court will address each argument in turn.

1.   **Class Action Waiver**

Plaintiffs assert that the Arbitration Notice is unconscionable because it bars all class action suits.  A number of courts have scrutinized Comcast's attempts to limit or eliminate class actions.  Several courts have struck down Comcast's bar on class action suits in its arbitration notices.  Of particular note is Thibodeau v. Comcast Corp., 2006 PA Super 346, 912 A.2d 874 (PA. Super Ct.  2006), in which the court strongly rebuked Comcast's attempt to prohibit class actions.  There, the court noted, "It is only the class action vehicle which makes small consumer litigation possible.  Consumers joining together as a class pool their resources, share the costs and efforts of litigation and make redress possible.  Should the law require consumers to litigate or arbitrate individually, defendant corporations are effectively immunized from redress of grievances." Id. at 885.  The Thibodeau court struck down Comcast's class waiver language noting:

> The Comcast consumer Agreement attempts to preclude all
> class action litigation in court or in arbitration, and

-17-

attempts to mandate that all consumers arbitrate all
claims as individuals. The Comcast consumer Agreement is
a contract of adhesion unilaterally imposed on all
consumers. Consumers including Mr. Thibodeau are subject
to every term without choice. Mr. Thibodeau was forced
to accept every word of all 10 pages of the mass-
delivered Comcast customer Agreement or have no cable
televison service whatsoever, since Comcast holds a
government-authorized geographic monopoly. Mr. Thibodeau
and his class members are claiming minimal damages. Mr.
Thibodeau and each of his class members allege they were
unlawfully overcharged $9.60 per month. Everyone knows
that these claims will never be arbitrated on an
individual basis, either by the named plaintiffs or by
any other of the millions of class members they
represent. No individual will expend the time, fees,
costs, and or other expenses necessary for individual
litigation . . . . If the mandatory individual
arbitration and preclusion of class action provisions are
valid, Comcast is immunized from the challenges brought
by Mr. Thibodeau, brought by any class member, or
effectively from any minor consumer claims. It is
clearly contrary to public policy to immunize large
corporations from liability by allowing them to preclude
all class action litigation or arbitration. The
preclusion of class wide litigation or class wide
arbitration of consumer claims, imposed in a contract of
adhesion, is unconscionable and unenforceable.

<u>Id.</u> at 885-886

The First Circuit also struck down an attempt by Comcast to

bar a group of Boston, Massachusetts subscribers from bringing a

class action anti-trust claim. <u>See</u> <u>Kristian v. Comcast Corp.</u>, 446

F.3d 25 (1st Cir. 2006). There, after explaining the tremendous

obstacles to success in antitrust cases, the court ruled:

If the class mechanism prohibition here is enforced,
Comcast will be essentially shielded from private
consumer antitrust enforcement liability, even in cases
where it has violated the law. Plaintiffs will be unable
to vindicate their statutory rights. Finally, the social
goals of federal and state antitrust laws will be

frustrated because of the "enforcement gap" created by the de facto shield.

Id. at 61.[7]

Significantly, the Eleventh Circuit in Dale v. Comcast, 498 F.3d 1216 (11th Cir. 2007), struck down Comcast's arbitration agreement containing a class action waiver.   Unlike the present case, it appears that in the Dale case, the plaintiffs did not have an option to opt out of the arbitration provisions.   In addition, the plaintiffs in Dale sued under a statute that did not contain a fee shifting provision for prevailing parties.   Considering the barriers faced by the specific plaintiffs in the Dale case, the Eleventh Circuit determined:

> The cost of vindicating an individual subscriber's claim, when compared to her potential recovery, is too great. Additionally, because the Cable Act does not provide for the recovery of attorneys' fees or related costs for the violations alleged by the subscribers, and because state law allows fees and costs to be awarded only where bad faith is shown, it will be difficult for a single subscriber to obtain representation.   This will allow Comcast to engage in unchecked market behavior that may be unlawful.   Corporations should not be permitted to use class action waivers as a means to exculpate themselves from liability for small-value claims.

Id. at 1224.

---

[7]   The First Circuit rejected the argument that the availability of attorneys fees for victorious plaintiffs in antitrust cases tipped the scales in favor of allowing the class action ban.   Kristian, 446 F.3d at 59.   The court explained, "We recognize that the antitrust statutes provide for an award of attorney's fees  . . . . However, this would be, at best, a dubious investment for any rational attorney.   Antitrust cases by their nature are difficult and uncertain."   Id. at n.21.

The Eleventh Circuit concluded its analysis with the following guidance:

> The enforceability of a particular class action waiver in an arbitration agreement must be determined on a case by case basis, considering the totality of the facts and circumstances.  Relevant circumstances may include, but are not limited to, the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical affect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns.

Id. at 1224.

While Dale is certainly significant, it is not the only Eleventh Circuit case addressing the issue of class action prohibitions in arbitration agreements.

In Randolph v. Green Tree Fin. Corp., 244 F.3d 814, 819 (11th Cir. 2001), the court upheld a ban on class actions in an arbitration agreement even though the ban precluded the plaintiffs from utilizing class action procedures in vindicating their statutory rights under the Truth in Lending Act, 15 U.S.C. § 1601, et seq. (TILA).  There, the plaintiffs sued defendants under TILA and the Equal Credit Opportunity Act, 15 U.S.C. § 1691.  The district court compelled arbitration and dismissed the law suit with prejudice.  The Eleventh Circuit reversed the district court, holding that the arbitration agreement thwarted the remedial purpose of TILA and was unenforceable because of the high costs plaintiffs would bear to pursue arbitration.  The United States

-20-

Supreme Court, however, reversed the Eleventh Circuit's reversal of the district court and remanded the matter to the Eleventh Circuit.

On remand, the Eleventh Circuit upheld the district court's order compelling arbitration.  It appears that the Eleventh Circuit was persuaded that the plaintiffs, although barred from proceeding collectively, would be able to obtain legal representation and could be made whole by virtue of TILA's attorneys' fee provision: "the public policy goals of TILA can be vindicated through arbitration, and the statute contains other incentives--statutory damages and attorneys fees--for bringing TILA claims.  Not only that, but TILA also provides for enforcement by administrative agencies." Randolph, 244 F.3d at 818.

In the more recent decision of Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359 (11th Cir. 2005), the Eleventh Circuit affirmed a district court's decision to compel arbitration of various claims of former employers against defendant over the objection of the plaintiffs.[8]  The plaintiffs attacked the arbitration provision which was contained in a dispute resolution procedure policy sent to all employees.  Germain to the instant dispute, the plaintiffs asserted that the arbitration provision was

---

[8]   The plaintiffs in Caley sought relief under the Age Discrimination in Employment Act, the Fair Labor Standards Act, the Employee Retirement Income Security Act, and Title VII of the Civil Rights Act of 1964. 428 F.3d at 1364.  Each of these acts provides for the recovery of attorneys' fees and litigation costs.  See 29 U.S.C. § 626(b) (ADEA), 29 U.S.C. § 216(b) (FLSA), 29 U.S.C. § 1132(g)(1) (ERISA), and 42 U.S.C. § 2000e-5(k) (Title VII).

substantively unconscionable because it barred class action suits against the defendant employer.  The Eleventh Circuit determined that the interdiction of class action suits was not unconscionable and was consistent with the goals of arbitration, including simplicity and expedience.  The court explained: "As the Supreme Court has explained, the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer simplicity, informality, and expedition, characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims." Id. at 1378 (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991)).

     The Eleventh Circuit also determined that a class action waiver was appropriate in the case of Jenkins v. First American Cash Advance of Georgia, LLC, 400 F.3d 868 (11th Cir. 2005).  In Jenkins, the plaintiff entered into several lending transactions with defendant and each time she obtained a loan, she signed an arbitration agreement that, inter alia, waived her right to pursue a class action suit.  Nevertheless, the plaintiff filed a class action suit against the defendant alleging that the defendant engaged in usury and racketeering.  The defendant moved to compel arbitration, and the district court denied the motion, finding among other things, that the arbitration agreements were substantively unconscionable because they barred class actions. Id.

at 877.   The district court reasoned that "a class action is the only way that borrowers with claims as small as the individual loan transactions can obtain relief" and determined that a borrower would likely not be able to garner affordable legal representation. Id.

The Eleventh Circuit, however, reversed the district court's determination on substantive unconscionability.   The Eleventh Circuit noted, "We have held . . . that arbitration agreements precluding class action relief are valid and enforceable." Id. at 878.   The Eleventh Circuit further offered that "arbitration agreements prohibiting class action relief do not necessarily choke off the supply of lawyers willing to pursue claims on behalf of debtors . . . . When the opportunity to recover attorneys' fees is available, lawyers will be willing to represent such debtors in arbitration." Id. at 878. (Internal citations omitted).

Although a number of courts have addressed Comcast's various attempts to innoculate itself from class action litigation, this Court must evaluate the present class action waiver through the prism of Eleventh Circuit case law.   The aforementioned Eleventh Circuit cases of Dale, Randolf, Caley and Jenkins each addressed class action waivers.   In Dale, the court struck down Comcast's class action waiver and found significant the fact that the plaintiff would not be entitled to attorneys fees under the prevailing statute.   In Randolf, Caley, and Jenkins, the court

upheld the class action waiver and found that attorneys fees were available to prevailing plaintiffs in each case.

Taking into consideration the particular facts and circumstances of this case, including the fact that attorneys fees are available to prevailing Plaintiffs under FDUTPA Florida Statute Section 501.2105, this Court determines that the class action waiver is not unconscionable. This determination is supported by the fact that Comcast has agreed to advance the filing fees and arbitrators' fees, a prevailing Plaintiff has no obligation to repay the advanced filing and arbitrators' fees, and Plaintiffs may choose between two arbitration services. Further, Comcast has provided Plaintiffs an opportunity to opt out of arbitration and has indicated that Plaintiffs' cable services would not be altered if Plaintiffs were to opt out of arbitration. Plaintiffs were not presented with a take it or leave it situation. Plaintiffs had the option to opt out of arbitration and preserve their rights to litigate in courts of appropriate jurisdiction, individually or collectively. Plaintiffs did not opt out of arbitration, and Plaintiff must live with that decision.

### 2. **One Year Limitation**

The Arbitration Notice contains language purporting to impose a one year statute of limitation on certain claims, and Plaintiffs assert that the one year limitation provision, which follows, is unenforceable: "You must contact us within one (1) year of the date

of the occurrence of the event or facts giving rise to a dispute (except for billing disputes, which are subject to the billing dispute provisions in the agreement), or you waive the right to pursue any claim based upon such event, facts or dispute." (Doc. # 9-2 at 15).

Plaintiffs correctly assert that, absent the limitation stated in the Arbitration Notice, Plaintiffs would proceed under a four year statute of limitation with respect to their FDUTPA claims. See Florida Statute Section 95.11(3). Thus, this Court must determine whether reducing Plaintiffs' window of time to assert a FDUTPA claim from four years to one year is unenforceable.

Several Florida courts have discussed arbitration agreements that whittle away the rights afforded individual plaintiffs and the public at large under FDUTPA. In Holt v. O'Brien Imports of Ft. Myers, Inc., 862 So. 2d 87 (Fla. 2d DCA 2003), the trial court compelled arbitration of a suit brought by buyers against a car dealer. Id. at 88. The buyers' complaint sought damages and injunctive relief under FDUTPA, TILA and the Florida Motor Vehicles Retail Sales Finance Act, Florida Statute Section 520. Holt 862 So. 2d at 89. The appellate court, however determined that the arbitration agreement, which limited attorneys' fee awards and barred injunctive relief, was unenforceable. Id. The appellate court noted that FDUTPA allowed injunctive relief and determined

that an arbitration agreement could not strip the remedy of
injunctive relief away. The court explained:

> The buyers seek injunctive relief but the arbitration
> agreement authorizes only an award of damages, fees, and
> costs. Section 501.211 [of FDUTPA] is broadly worded to
> authorize declaratory and injunctive relief even if those
> remedies might not benefit the individual consumers who
> filed the suit. The FDUTPA is designed to protect not
> only the rights of litigants, but also the rights of the
> consuming public at large. Any attempt to limit FDUTPA
> *liability* is contrary to public policy. An individual
> cannot waive the protection of a statute that is designed
> to protect both the public and the individual.
> Therefore, the unavailability of injunctive relief
> renders the arbitration clause unenforceable.

Holt, 862 So. 2d at 89. (Internal citations omitted, emphasis
added).

Another relevant case is Fonte v. AT&T Wireless Services,
Inc., 903 So. 2d 1019 (Fla. 4th DCA 2005). There, a consumer filed
a class action complaint against AT&T for consumer rate increases
under FDUTPA. The trial court compelled arbitration of the suit,
and the consumer appealed. The arbitration agreement barred class
actions and did not authorize attorneys fees for the prevailing
consumer. The appellate court determined that the class action
bar was enforceable; however, the appellate court did not uphold
the failure of the arbitration agreement to award attorneys' fees
to a prevailing consumer. The court explained: "FDUTPA is a
remedial statute designed to protect consumers. One of those
remedial purposes is to provide for the possibility of an
attorneys' fee award." 903 So. 2d at 1024 (citing Florida Statute

Section 501.2105).   The court solved the problem by severing from the arbitration agreement the provision prohibiting attorney's fees and allowed the other provisions, including the bar on class actions, to stand.[9]

In the present case, Plaintiffs complain that the Arbitration Notice illegally shortens the time in which Plaintiffs may pursue claims against Defendants.  The Eleventh Circuit has spoken on this issue and has determined that "a contractual provision shortening the period of time for filing a suit was not contrary to a strong public policy." Maxcess, Inc. v. Lucent Technologies, Inc., 433 F.3d 1337, 1341 (11th Cir. 2005)(citing Burroughs Corp. v. Suntogs of Miami, Inc., 472 So. 2d 1166, 1169 (Fla. 1985).  In Maxcess, Inc., the Eleventh Circuit applied the law of New York pursuant to a choice of forum clause in a contract, and concluded that neither New York nor Florida law would be offended by an agreement in a contract to shorten the statute of limitations.  The Court noted, "the parties may cut back on the statute of limitations by agreeing that any suit may be commenced within a shorter period than is prescribed by law.  Such an agreement does not conflict with public policy but, in fact, more effectively secures the end sought to be

---

[9] The court added: "As a general rule, contractual provisions are severable, where the illegal portion of the contract does not go to its essence, and, with the illegal portion eliminated, there remain valid legal obligations." 903 So. 2d at 1024 (internal citations omitted).

attained by the statute of limitations." 433 F.3d at 1341 (internal citations omitted).

After considering Plaintiffs' arguments and Florida law, this Court determines that the one year limitation is enforceable. The Arbitration Notice is not substantively unconscionable.

**V.   Conclusion**

This Court finds that the parties are bound by the terms of the Arbitration Notice. Despite the apparent factual conflict, Plaintiffs' affidavits present a bare denial that they received the Arbitration Notice by mail. Plaintiffs' averments are not sufficient to rebut the presumption that they received the Arbitration notice as Defendants assert that the Arbitration Notice was sent by first class mail in the same envelope as the cable bills. Plaintiffs have not come forth with evidence substantiating their denial that they received the Arbitration Notice. Plaintiffs had thirty (30) days in which to opt out of the terms of the Arbitration Notice, and Plaintiffs did not opt out. Further, Plaintiffs paid their comcast bills and continued to utilize Comcast's services. Accordingly, this Court finds that the parties reached an agreement to arbitrate.

Although Plaintiffs argue that the Arbitration Notice was both procedurally and substantively unconscionable, after due consideration, this Court determines that the Arbitration Notice is enforceable. Plaintiffs were free to reject the terms of the

Arbitration Notice, a fact which strongly militates against a finding of procedural unconscionability. Further, the class action waiver and truncated statute of limitations do not render the Arbitration Notice substantively unconscionable.

The Court finds it appropriate to compel the parties to arbitration and to stay this action pending the completion of the arbitration.

Accordingly, it is now

**ORDERED, ADJUDGED, AND DECREED:**

1. Defendants' Motion to Compel Arbitration and Motion to Stay Action (Doc. # 9) is **GRANTED** and the case will be stayed pursuant to 9 U.S.C. § 3 pending arbitration under the Arbitration Agreement.

2. The case is hereby **STAYED** pending notification by the parties that they have completed the arbitration process and the stay is due to be lifted or the case is due to be dismissed. The Clerk shall terminate all deadlines and motions, and administratively close the case.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 14th day of January, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record

-29-